(Decided 2nd May, 1878.)

## ASBURY FAWSETT *vs.* JAMES CLARK.

*Action of Slander—Admissibility of Evidence to show that words Actionable per se were not used in an Actionable sense.*

In an action of slander the words charged to have been spoken against the plaintiff were, "you are a thief," "you are no better than a thief," "you are a confidence man," the latter words being alleged to have been used in the sense that the plaintiff had been and was guilty of obtaining by false pretence from some other person some chattel, &c., with intent to defraud such person. The evidence showed the words to have been spoken with reference to the plaintiff's conduct in writing a letter to a third person to know if the latter had been paid a sum of money which the defendant

' claimed to have paid him on behalf of the plaintiff from whom he had demanded its re-payment. HELD:

1st. That words, though actionable *per se*, if spoken in relation to a subject as to which no larceny or felony was capable of being committed, or was committed, are not actionable.

2nd. That evidence was admissible to show that the words complained of were not intended to impute to the plaintiff a felony or other infamous crime.

APPEAL from the Superior Court of Baltimore City.

The case is stated in the opinion of the Court.

*First Exception.*—At the trial the plaintiff offered the following prayer:

That if the jury shall find for the plaintiff upon any count in the declaration, they are not limited as to the amount of damages they may assess to the actual damage which the plaintiff may have sustained, but may assess exemplary damages by way of punishment to the defendant, for the wrong and indignity put upon the plaintiff by applying to him the words charged in such count.

And the defendant offered the five following prayers:

1. If the jury believe from the evidence that the alleged slanderous words were uttered by the defendant as alleged, but were so uttered solely in reference to the plaintiff's conduct in writing the letter to Doty, spoken of in the evidence, and were not intended, and were not understood by the bystanders to charge the plaintiff with having committed a felony, then the plaintiff is entitled to nominal damages merely.

2. If the jury believe from all the testimony in the case, that the defendant, in uttering the alleged slanderous words, provided they find such utterance, was not actuated by malice in fact, then the plaintiff can recover nominal damages merely.

3. If the jury believe from the evidence, that the alleged slanderous words were uttered by the defendant as alleged,

but were so uttered solely in reference to the plaintiff's conduct in writing the letter to Doty, spoken of in the evidence, and were not intended to, and were not understood by the bystanders, to charge the plaintiff with having committed a felony, or other crime punishable corporally, then the plaintiff is not entitled to recover.

4. If the jury believe that the defendant uttered the words, "confidence man," in reference to the plaintiff, meaning thereby to impute to plaintiff, the commission of no crime or felony, and that said words were meant and understood to charge the plaintiff with being a man who abused one's confidence after obtaining it, by professing to be a friend, then the plaintiff cannot recover for the utterance of said words in this action.

5. The jury in order to find for the plaintiff under the third count of the declaration, must not only find that the defendant uttered the words, "you are a confidence man," in regard to the plaintiff, but that he was understood by the bystanders thereby to charge that the plaintiff had been, and was guilty of obtaining by false pretense from some other person, some chattel, money or valuable security, with intent to defraud such person of the same.

The Court, (DOBBIN, J.,) granted the plaintiff's prayer and rejected the first, second, third and fourth prayers of the defendant, the third and fourth being rejected on the ground of want of evidence to sustain them. The defendant's fifth prayer was conceded.

The defendant excepted.

The jury rendered a verdict for $1000 for the plaintiff, and judgment was entered for the same, with interest and costs. The defendant appealed.

The cause was argued before BARTOL, C. J., BOWIE, STEWART, MILLER and ALVEY, J.

*William Rowland,* for the appellant.

The defendant's first and third prayers should have been granted, as they embody a proposition which is clear law.

If words are actionable, yet if spoken and understood as referring to facts which cannot constitute an offence, no action can be maintained. *Van Rensselaer vs. Dole,* 1 *John. Cases,* 279; *Stone vs. Clark,* 21 *Pick.,* 53; *Carter vs. Andrews,* 6 *Pick.,* 3; *Dexter vs. Taber,* 12 *John.,* 239 : *Norton vs. Ludd,* 5 *N. H.,* 204; *Smith vs. Miles,* 15 *Vt.,* 245; *Williams vs. Cawley,* 18 *Ala.,* 206; 6 *Rob. Pr.,* 951; *Quinn vs. O'Hara,* 2 *E. D. Smith,* 388; *Robinson vs. Keyser,* 22 *N. H.,* 324.

The testimony of Winyard, Hawkins and Fawsett was before the jury, to decide how the alleged slanderous words were uttered or understood, and was abundantly sufficient to support these two prayers.

The defendant's fourth prayer ought to have been granted. It covers the third count, in which the words are not actionable in themselves, and therefore, required a colloquium. It was, therefore, for the jury, from the facts of the case, to decide whether the words, "you are a confidence man," were used in the sense imported in the colloquium, and were so understood by the hearers, and were, therefore, actionable—*Peterson vs Sentman,* 37 *Md.,* 140; *Randall vs. Butler,* 7 *Barb.,* 260; *Atkinson vs. Scammon,* 22 *N. H.,* 43—otherwise it would have been necessary to have averred in the colloquium, that the words "confidence man" had, by usage, acquired such a signification as to impute a definite offence, and were so understood by the hearers. *Pike vs. Van Wormer,* 5 *How. Pr. R.,* 175.

There is no pretence that the words have acquired, by usage, such a signification. The plaintiff relied on the use of the words in the sense set out in the third count. The prayer is simply to the effect, that if such sense was not

intended by defendant, then the plaintiff cannot recover for the use of such words, "confidence man."

The granting of the plaintiff's prayer was erroneous. It assumed that the plaintiff had a right to recover under the third count. It is submitted that there is no evidence in the cause, under which the plaintiff could recover under this third count. Because there is no proof that the defendant used the words "confidence man" in the special sense charged in the third count. The plaintiff's prayer therefore, was erroneous in so far as it assumed the plaintiff's right to recover under the third count.

*John S. Tyson*, for the appellee.

The defendant's first prayer was rightly rejected.

1st. Because if "the alleged slanderous words were uttered by the defendant as alleged," *i. e.* "falsely and maliciously," this constitutes the whole gist of the action for slander, and negatives every defence. 2 *Saund. Pl. & Ev.*, 808.

2nd. There is no evidence that the words were uttered "solely in reference to the plaintiff's conduct in writing the letter." Defendant does not use the word "*solely.*" He says: "the *excitement and letter* caused all that was said." It is unreasonable to suppose that the defendant intended to testify, that when he called the plaintiff a "thief," he merely meant that he was a letter-writer, yet the language of the prayer would require the jury to find that such was the defendant's meaning, and that he was so understood by the bystanders. The fact that the slanders were uttered without any ground for believing them to be true, instead of diminishing the damages, (as this prayer would have it,) ought rather to increase them. It is certainly immaterial to inquire whether the words were uttered "in reference to" one thing, or another; or were caused by one thing or another; the question is as to how they were intended and understood.

3rd. There is no evidence that the words were intended, or understood, in any but their ordinary sense. Even as to the words " *confidence man* "—the only words which the defendant endeavored to explain—he merely testified that *he* understood by those words, " one who claims to be your friend and turns out to be your enemy ;" a definition not at all *inconsistent* with the common acceptation of the words, as meaning a criminal offence. But the prayer also applies to the word " *thief,* " as one of " the alleged slanderous words,'' and defendant does not tell us what he understood by that word. *Chipman vs. Stansbury,* 16 *Md.,* 154.

Nor does the defendant say what the bystanders understood by any of the words. There is, in fact, no evidence whatever, in the least degree, tending to prove that the words were intended or understood in any but their ordinary sense. *Long vs. Eakle,* 4 *Md.,* 454.

A forcible refutation of the doctrine contained in the defendant's second prayer is found in 1 *Starkie on Slander,* 213, (*margin.*) " It seems to be clear, as well upon legal principles, as on those of morality and policy, that where the wilful act of publishing defamatory matter derives no excuse or *qualification* from collateral circumstances, none can arise from a consideration, that the author of the mischief was not actuated by any deliberate and malicious intention to injure, beyond that which is *necessarily to be inferred form the very act itself.* For if a man wilfully does an act likely to occasion mischief to another, and to subject him to disgrace, obloquy, and temporal damage, he must, in point of law, as well as morals, be presumed to have contemplated the evil consequences which were likely to ensue. * * * It would be highly impolitic and inconvenient as a rule of law to permit every man to destroy the characters of others, provided he was not actuated by motives of *express* malice, but acted without consideration, heedless of consequences." See also 2 *Saund. Pl. & Ev.,* 808.

The defendant's third prayer is substantially the same as the first prayer, and liable to the same objections.

The defendant's fourth prayer was rightly rejected.

1st. Because it is based upon the mere belief of the jury, and not upon their belief from the evidence.

2nd. There is no evidence to support it.

3rd. It only leaves to the jury to find that the defendant *meant* to impute no crime, but does not require them to find that he was *understood* by the bystanders to impute no crime ; for although it requires the jury to believe "that said words were meant and *understood* to charge the plaintiff with being a man who abused one's confidence," &c., the words might have been so understood, and also understood to impute a crime. For a "confidence man" is indeed one who abuses confidence, &c., and thereby obtains money or goods under false pretences. Besides, the prayer leaves it to the jury to believe *how* the words were understood, without saying *by whom* they were so understood. The words "confidence man" have acquired a definite meaning ; require no innuendo, nor any evidence to show how they were understood by the bystanders, especially in *connection* with the word "thief." *Woolnoth vs. Meadows,* 5 *East,* 463 ; *Roberts vs. Camden,* 9 *East,* 93 ; *Garrett vs. Dickerson,* 19 *Md.,* 447–8.

The plaintiff's prayer merely instructs the jury that they *may* (not must) assess exemplary damages. This proposition certainly needs no authority to support it. No ground of objection to this prayer was disclosed at the trial. There is no special exception to it. As to exemplary damages, see *McWilliams vs. Hoban,* 42 *Md.,* 57.

Bowie, J., delivered the opinion of the Court.

The appellee in this case sued the appellant in the Superior Court of Baltimore City, in an action for slander.

The *nar.* contained three counts ; the first, charged the defendant with falsely and maliciously saying of the plain-

Fawsett *vs.* Clark.

tiff, " *You are a thief.*" The second count alleged, the defendant falsely and maliciously published of the plaintiff, the words following, viz., "You are no better. than a thief." And the third count charged, that the defendant intending to injure the plaintiff in his good name, etc., falsely and maliciously spoke and published of the plaintiff, the words following, that is to say, " *You are a confidence man,*" thereby, and then and there meaning that he, the plaintiff had been and was guilty of obtaining by false pretence from some other person, some chattel, etc., with intent to defraud such person.

The defendant pleaded "*non cul.*"

At the trial the plaintiff, to maintain the issue joined on his part, testified in his own behalf that he was a cattle dealer at Calverton Drove Yards; that in the spring of 1875, Messrs. Baugher & Redsecker, proprietors of the Calverton Drove Yards failed, and the plaintiff succeeded them in the fall of 1875 ; that he bought from Baugher with defendant's approval, a quarter interest in two trotting horses, in which Fawsett had an interest, and had authority from Baugher to settle the earnings of the horses with Fawsett, who had the management of the horses ; Fawsett gave a statement and plaintiff asked for an itemized account which Fawsett gave; which did not contain an item of $100 for cash paid one Doty for driving; he then gave another account containing this item, and exceeding the former account by at least $1000 for the same period ; the plaintiff then wrote to Doty to inquire if the charge of $100 was correct, and also wrote to others. Doty sent plaintiff's letter to Fawsett. Witness further testified, that on Tuesday, before the 24th May, 1876, it being market morning, a number of persons about, he was at Calverton Hotel when Fawsett came in, handed witness *Doty's letter* and asked witness if he had written it, and why ; witness told him, " Because he had a right do it ;" Fawsett said, " that if he had been at home when he received the letter

he would have cowhided witness;" "said I was a liar," "said I was a confidence man," "no better than a thief"— "yes, a thief," etc. Several other witnesses were called on the part of the plaintiff. John Winyard testified, that he heard, on the occasion in question Fawsett call Clark *a liar and a thief,* said he would steal and rob.

On cross-examination he said, Fawsett had a letter, and asked him Clark if he wrote it; Fawsett said, Clark had acted like a thief; he said *that in connection* with that letter.

S. D. Hawkins, in his examination-in-chief by plaintiff, testified "Fawsett walked over to Clark, shewed him the letter; asked him if he had written it, said no gentleman would have written such a letter; told him that he was a "confidence man," "no better than a thief," said "he was a thief," or "no better than a thief."

Being cross-examined, this witness said, that the whole quarrel had reference to the letter. The substance of what Fawsett said to him was, *you have charged me with making false accounts.*

The defendant was examined in his own behalf, and deposed substantially to the same facts, saying "that the letter caused all that was said, there was no other trouble between them."

The appellant offered five prayers, the first four were rejected, and the fifth conceded. The appellee submitted one prayer which was granted. The appeal is taken from these rulings below. Omitting the second of the appellant's series, (which was not insisted on in this Court,) they all maintain the proposition, that the words spoken, though actionable *"per se,"* if spoken in relation to a subject as to which no larceny or felony was capable of being committed, or was committed, the charge will not be actionable.

The first prayer was refused absolutely, the third and fourth upon the ground that there was no evidence to

Fawsett *vs.* Clark.

sustain them ; from which it might be inferred that if there had been in the judgment of the Court below, evidence tending to show the words were used in relation to the letter, or the matters contained in it, those prayers would have been granted.

The doctrine of the elementary writers on slander is, that words should be construed in reference to the subject-matter—"Words may import a charge of felony, yet if it appear that the fact charged could not have happened, an action cannot be maintained." *Snagg vs. Gee*, 4 *Co.*, 16 (*a*,) 2 *Bing. N. C.*, 402 ; *Stephens' Nisi Prius*, 2553.

Lord HOBART says, "the slander and damage consist in the apprehension of the hearers ; and in *Gilbert's Cases on Law & Equity*, the rule laid down is, that the words shall be taken in the sense in which the hearers understood them." *Ibid; vide* also, 1 *American Leading Cases, Hare & Wallace*, 118, *Notes to Broker vs. Coffin, etc.*, *3rd Edition*.

Lord DENMAN (in the case of *Read vs. Ambridge*, 6 *C. & P.*, 308,) after having stated to the jury, that the first question for their consideration was whether they thought the words showed an intention to impute felony, observed "It is said, that the words evidently meant, that the plaintiff had robbed Mrs. Read, by injuring her in trade." But if the defendant meant to convey that meaning, it seems to me he should have used very different words. It is not enough that he had some reservation in his own mind. The question is, *what he meant to make other people believe*? whether he meant to have it understood by others, that the plaintiff had committed a felony ?

. The words used in this case, were, "Do you know that you are extremely wrong for putting that damned thief's name in your window ; he is the most blasted thief in the world, and ought to have been hung with his aunt years ago. You may tell him from me, that he is a bloody

thief, and I can prove it; and he ought to be hung.'' The jury found a nominal verdict for the plaintiff.

Mr. Chitty, in his note to 3 *Black. Com.*, 123, upon injuries affecting reputation, after specifying words which are actionable in themselves, says, '' The accusation however must be precise, or have such an allusion to some prior transaction, that the hearers of the slander must necessarily have understood that the slanderer meant to impute to the plaintiff, guilt of some punishable offence; for though the rule of construing words ' *in mitiori sensu*,' is now exploded, yet an innuendo or construction cannot be given to words, which they do not necessarily import, either of themselves, independently of any other circumstances, or with necessary reference, or some other circumstances occurring at the time of the accusation. 6 *T. R.*, 691; 4 *Co.*, 17 *b.*; 11 *Mod.*, 99, *etc.*'' In the case of *Garret vs. Dickerson*, 19 *Md.*, 418, this Court recognized this principle, and said in case of slander, words take their actionable character from the sense in which they appear to have been used, and that in which they are most likely to be understood by those who hear them—*vide also*, 2 *Greenleaf's Ev.*, sec. 417, 13*th Edition, p.* 378.

The words laid in the several counts, both those which are actionable ''*per se*,'' and those which are not, are charged as being spoken in the second person, addressed to the plaintiff himself.

The evidence of the plaintiff, testifying for himself is, that these words were part of a violent, verbal remonstrance by the defendant, against the conduct of the plaintiff, in writing a letter to a third person, relating to defendant's transactions with him—Referring to the letter and its contents, the defendant said the plaintiff was '' a liar,'' '' a confidence man ''—'' no better than a thief,''—a thief—that the plaintiff '' had sued him,'' and he had offered to pay more than I, (the plaintiff,) would ever get—'' *the*

*substance of what Fawsett said in regard to the letter was, that I, (the plaintiff,) had charged him therein with making false accounts.*"

All the witnesses corroborate this view. The circumstances show, that the terms of reproach used were mere abuse,—the outpouring of passion; "liar," "thief," "confidence man," were uttered in quick succession, in reference to the contents of the letter, explaining to all who heard them, the sense in which they were used.

"In an action of slander for words, some of which if spoken and understood in their ordinary sense, would certainly be actionable, the jury may consider whether taking the whole conversation together, the particular words are so qualified by the other parts of the conversation, as to show that they were not intended to convey the idea which their primary and ordinary meaning would give." *Shipley vs. Todhunter*, 7 *C. & P.*, 680 ; 3 *Stephens' N. P.*, 2575.

Measured by the standard of these authorities, we think there was evidence offered by the defendant, tending. to show that the words used by him were not intended to impute to the plaintiff a felony or other infamous crime, and the third and fourth prayers of the defendant, instructing the jury if they found they were not so intended, the plaintiff was not entitled to recover, should have been granted.

The defendant's first prayer, announcing the same principle, allowed the plaintiff nominal damages, and being inconsistent in that respect, with the third and fourth, was properly rejected.

The plaintiff's prayer prescribing the measure of damages is not obnoxious to the objection urged by the appellant, that it assumed the appellee had a right to recover on the third count. On the contrary, it is put hypothetically, viz., "if the jury shall find for the plaintiff, upon any count in the declaration."

The third and fourth prayers of the appellant being improperly rejected, the judgment below will be reversed, and a new trial awarded.

*Judgment reversed, and
new trial awarded.*

(Decided 2nd May, 1878.)