Merrill v. Marshall.

## Clara L. Merrill v. C. H. Marshall.

### Gen. No. 11,248.

1. SLANDER—*when word "thief" is actionable.* The word "thief," in its ordinary acceptation, imputes the crime of larceny, and is actionable *per se;* but if the word be spoken of the plaintiff in relation to a past act or transaction known to the hearers and which was not larceny or indictable as a crime, the use of such word is not actionable.

2. SLANDER—*when words used may not constitute.* When the words spoken are susceptible, in connection with other facts in evidence, of a meaning other than the imputation of a felony, it is a question for the jury whether such words were intended to impute felony.

3. SLANDER—*what evidence competent to show that words used were not.* Evidence is competent to show how the hearers of the words used understood them, and where the innuendo is that the word "thief" was intended by the defendant to impute larceny, and the evidence is to the

contrary, the word is not actionable and the plaintiff is bound by his innuendo.

4. SLANDER—*when charge of conspiracy is not actionable*. A state-ment made to the effect that husband and wife were engaged in a con-spiracy to cheat and defraud, is not slanderous in so far as it charges conspiracy.

5. CONSPIRACY—*who cannot be guilty of*. Husband and wife are in law one person and cannot, between themselves only, be guilty of or in-dicted for conspiracy.

Action on the case for slander. Error to the Circuit Court of Cook County; the Hon. EDWARD F. DUNNE, Judge, presiding. Heard in this court at the October term, 1903. Affirmed. Opinion filed April 11, 1904.

WILLIAM EUGENE BROWN, for plaintiff in error.

JAMES R. WARD, for defendant in error.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

This is error to reverse a judgment rendered in a suit by plaintiff in error against defendant in error. The declara-tion consists of only one count, which is as follows:

" For that whereas, the plaintiff, before and at the time of the committing by the defendant of the several griev-ances hereinafter mentioned, was a person of good name, credit and reputation, and deservedly enjoyed the esteem and good opinion of her neighbors and other worthy citi-zens of this state; and,

Whereas, also, before the committing of those grievances, to wit: on the 22nd day of September, A. D. 1896, in the county aforesaid, a certain policy of insurance against ac-cidents had been issued to the plaintiff upon the applica-tion of the plaintiff by the Travelers' Preferred Accident Association of Chicago, Illinois; and,

Whereas, also, said policy was still in force and effect at the time of the committing of the grievances hereinafter mentioned, yet the defendant, well knowing the premises, but contriving and maliciously intending to injure the plaintiff in her good name, credit and reputation, and to bring her into public scandal and disgrace with and among her neighbors and acquaintances, and to cause it to be sus-pected and believed by them and others that the plaintiff had been guilty of larceny, fraud and conspiracy after-

wards, to wit: on the 31st day of December, A. D. 1896, in the county aforesaid, in a certain discourse which the defendant then and there had in the presence and hearing of divers persons of and concerning the plaintiff and of and concerning the matters and premises aforesaid, falsely and maliciously, in the presence and hearing of said persons, spoke and published of and concerning the plaintiff and of and concerning the matters and premises aforesaid, the false, scandalous, malicious and defamatory words following, that is to say: 'She' (meaning the plaintiff), 'is a dirty fraud and thief.' 'She' (meaning the plaintiff), 'obtained that policy' (meaning the accident policy aforesaid), 'by false and fraudulent statements.' 'She' (meaning the plaintiff) 'stated that she was sound when she obtained that policy' (meaning the accident policy aforesaid), 'when she very well knew that that statement was false and fraudulent.' 'She' (meaning the plaintiff) 'and her husband' (meaning G. W. Merrill, the plaintiff's husband) 'have formed a conspiracy to cheat and defraud this company' (meaning the Accident Insurance Company aforesaid). 'She' (meaning the plaintiff) 'never met with any accident.' 'She' (meaning the plaintiff) 'is pretending to be injured for the purpose of cheating and defrauding this company' (meaning the Accident Insurance Company aforesaid). 'She' (meaning the plaintiff) 'fell on purpose to make a pretended claim against this company' (meaning the Accident Insurance Company aforesaid) 'and her husband (meaning G. W. Merrill, the plaintiff's husband) 'is helping her to carry out this fraud.' 'No honest woman would get hurt as she' (meaning the plaintiff) 'did, and we want no more women.' Meaning and intending thereby to charge that the plaintiff had been guilty of the crime of larceny, and had been guilty of fraud in obtaining said insurance policy, and had been guilty of the crime of conspiring and forming a conspiracy for the purpose of cheating and defrauding the said Accident Insurance Company by obtaining money from the said company upon a pretended claim of indemnity under said policy by false and fraudulent pretenses.

By means of the speaking and publishing of such said several false, scandalous and malicious words by the defendant the plaintiff has been and is greatly injured in her said good name, credit and reputation and brought into public scandal and disgrace, and has been and is otherwise injured. To the damage of the plaintiff in the sum of fifty thousand dollars," etc.

The defendant pleaded only the general issue. The jury found the defendant not guilty and judgment was rendered on the verdict. The innuendo in the declaration, as to the use by the defendant of the word "thief" is that the defendant, by the use of that word, meant and intended to charge the plaintiff with having been guilty of the crime of larceny. The word thief, in its ordinary acceptation, imputes the crime of larceny and is actionable *per se;* but if the word be spoken of the defendant in relation to a past act or transaction, which was known to the hearers, and which past act or transaction was not larceny, nor indictable as a crime, the use of the word is not actionable. Ayers v. Grider, 15 Ill. 37; Young v. Richardson, 4 Ill. App. 364, 373–4; Foval v. Hallett, 10 Ill. App. 265; Welker v. Butler, 15 Ill. App. 209; McKee v. Ingalls, 4 Scam. 30; Zuckerman v. Sonnenschein, 62 Ill. 115.

In Ayers v. Grider, *supra,* the words were that Grider stole Ayers' knife, money and purse. The proof was that Grider, a constable, arrested Ayers for a breach of a town ordinance, and took away his knife, which he afterward gave to one Puller. Subsequently Grider was in Puller's store, when Ayers came in and said to him, "Go and take up those men in the public square;" to which Grider replied that he would not, when Ayers said, "You shall, for you took me up and stole my knife and my money." The trial court was asked to instruct the jury "that, if the words proven to have been spoken by the defendant of the plaintiff, were spoken about and in relation to a known act, and that act, in law, is not a felony, which is known to the bystanders, they will find the defendant not guilty." The court refused to give the instruction, and this was held error, the court saying : "The instruction asked is clearly sustained by decisions laying down the rule contained in it, and should have been given by the court, as the proofs clearly presented a case for its application," citing numerous authorities.

In Zuckerman v. Sonnenschein, *supra,* the words were, " He is a robber. He is a thief. He is a forger; he gets

Merrill v. Marshall.

notes for ten dollars and changes them to one hundred dollars." The court, Mr. Justice Thornton delivering the opinion, held: "It was error to instruct the jury that if the defendant used words imputing a crime, they must find for plaintiff. The instruction asked by defendant, that if he did not intend imputing a crime by the speaking of the words, he was not guilty, should not have been modified by the court. The intent of the publication should have been submitted to the jury under the proof." The court, in the case last cited, cite McKee v. Ingalls, 4 Scam. 30. The slanderous words charged in that case were: "You are a thief. If you have got money you stole it." The general issue only was pleaded, as in the present case, and the court held correct the following instruction: "That if the jury believe from the testimony that Ingalls, at the time he called McKee a thief, did not intend to impute felony to him, the words are not actionable and they must find for the defendant." The court in Zuckerman v. Sonnenschein, *supra*, approved this instruction, and also approved an instruction in Read v. Ambridge, 6 C. & P. 308, telling the jury "that the first question for their consideration was whether they thought the words showed an intention to impute felony." The words charged in that case were: "He is the most blasted thief in the world and ought to have been hung; he is a bloody thief; he robbed Mrs. Read." Other cases cited *supra* are to the same effect. The law is the same in other jurisdictions. Fawset v. Clark, 48 Md. 494, 503–5; Bridgman v. Armer, 57 Mo. App. 528; Quinn v. O'Gara, 2 E. D. Smith, 388; Brown v. Myers, 40 O. St. 99; Norton v. Ladd, 5 N. H. 203.

When the words spoken are susceptible, in connection with other facts in evidence, of a meaning other than the imputation of felony, it is a question for the jury whether the words were intended to impute felony. Ayers v. Gridley, 15 Ill. 37; Zuckerman v. Sonnenschein, 62 Ill. 115, 117; Odgers on Libel and Slander, sec. 93 *et sequens*. Evidence is competent to show how the hearers of the words understood them. Nelson v. Borchenius, 52 Ill. 236; Foval

v. Hallett, 10 Ill. App. 265. The innuendo is, that the word "thief" was intended by the defendant to impute larceny, and if the evidence is to the contrary, the word is not actionable. The plaintiff is bound by the innuendo. Kimmis v. Stiles, 44 Vt. 353.

It is stated in the colloquium that September 22, 1896, a policy of insurance against accidents was issued by the Travelers' Preferred Accident Association of Chicago, to plaintiff, on her application. The policy was put in evidence by the plaintiff. The defendant was president of the accident association, and his name is signed to the policy, as president. It appears from the evidence that, prior to the uttering of any of the words charged, the plaintiff claimed to have experienced an accident within the terms of the policy, and had made a demand on the insurance company on account of it. We will now proceed to consider the testimony of plaintiff's witnesses as to the utterances by the defendant of the word "thief," in regard to the plaintiff, and as to their understanding of the sense or meaning in which the defendant used that word. John L. Johnson, who was in the life insurance business, testified that, about the middle of December, 1896, he heard a conversation between a Mrs. Frawley and the defendant, in the defendant's private office, while he was sitting in a reception room next to the office, and that when Mrs. Frawley left the defendant's office he went into it, and that defendant seemed agitated and said he was tired and sick of insuring women; and witness asked him what was the trouble, and defendant said that Mrs. Merrill, living on the West Side, had a policy with the company and was trying to defraud the company; that she was a dirty fraud and a thief, and that she and her husband had hatched up, or had a scheme to defraud the company. Witness, on cross-examination, testified that he knew that defendant was talking about an insurance matter; that he supposed Mrs. Merrill had some claim there; that he did not understand that defendant intended to charge her with stealing a horse, or dry goods, or money. The following questions were asked the witness, and the following answers made by him:

"Q. Suppose larceny is this: the criminal stealing of the property of another, stealing, taking and carrying away; some man coming in here and picking up that overcoat and taking it out, with intent to steal. Did you understand from what he said that he intended to charge that she had committed an offense of that kind? A. No.

Q. Now, he was simply talking about the policy, wasn't he? A. As I understood it, yes.

Q. And you so understood it, did you? A. Yes.

Q. So, with your knowledge of insurance matters, you understood perfectly well what he was referring to? A. Yes."

We think it too evident to require argument that this witness did not understand that the defendant intended to impute larceny to the plaintiff, but merely that he was referring to some trouble about the procurement of the policy, or plaintiff's claim thereunder.

Charles Doolittle testified that he was in the reception room next to the defendant's office when the witness Johnson went in there in December, 1896, and heard the conversation between Johnson and the defendant. The following question was asked the witness and answer given by him:

"Q. State the conversation. A. Mr. Johnson stepped into the office and Mr. Marshall said, ' I am sick and disgusted with insuring women; there is more trouble and disturbance with them—' and seemed rather flustrated about it; and Mr. Johnson said to him, ' What you got? something particular disturbing you ?' or something like that. He said yes, there was a case of a woman, he said either Clara or Carry; I won't be positive as to the first name, but I think he said Clara Merrill; that she had come into the office and had been insured, got a policy there; that at the time she got the policy she was sick, an invalid, and she lied when she got it, and said she was a dirty fraud and thief, and he was disgusted with the woman business. That was about the amount of the conversation."

On cross-examination the witness testified that he knew

Johnson and the defendant were talking about the insurance business, that all the conversation was about insurance. We think it clear from the account of the conversation given by this witness, in his answer above quoted, that neither he nor any one could have understood from the remarks of the defendant anything other than that the defendant referred to the manner in which the plaintiff procured the policy, viz: that "she was sick, an invalid, when she got it," and that she got it by false representations as to her health.

D. W. Owen, an attorney, who succeeded the defendant as president of the Travelers' Preferred Accident Association, testified that he had a conversation with the defendant at the office of the Accident Insurance Company in December, 1896. He relates what the defendant said of the plaintiff as follows : " He said that she lied when she made out her application for a policy, and that if she persisted in making such a claim as that against the Insurance Company, and the company ever paid her anything, he says, she would be a thief if she took it—something to that effect—that the whole transaction was a lie, and only a conspiracy between—" Here there was an interruption. " Q. Go ahead. A. It was a conspiracy between her and her husband to defraud the company." On cross-examination of this witness the following questions and answers occurred :

"Q. Did you understand from that language used by him to you that she had stolen any money from them, or property of any kind? A. No.

Q. Or other things? A. No.

Q. And you understood that language was used in reference to this claim against the Insurance Company? A. Yes, sir.

Q. Which had not then been adjusted? A. Yes, sir."

The witnesses Johnson, Doolittle and Owen, called by plaintiff, were the only witnesses who testified to the utterance of the word thief by the defendant, in reference to the plaintiff, and it is plain from their evidence that the defend-

ant was speaking of the plaintiff's policy, and her claim against the insurance company, and that the witnesses so understood, and could not have understood otherwise, and that they did not understand that the defendant meant or intended to impute larceny to the plaintiff. The obtaining an insurance policy by false representations, or making an unfounded or unjust claim against an insurance company, is not larceny. In saying this we do not, in the least, intend to intimate that there was any fraudulent or unfair conduct on the part of the plaintiff. No question of that kind is before us. Our conclusion from the evidence of the plaintiff's witnesses is that the defendant, by the use of the word "thief," did not intend to impute larceny to the plaintiff, and that the word, as used by him, is not actionable.

Plaintiff's counsel, however, relies on the averment that the defendant spoke these words : " She and her husband have formed a conspiracy to cheat and defraud the company," and there is evidence tending to prove the averment. A conspiracy to cheat or defraud is, in this state, merely a misdemeanor. Waiving the question whether the words are actionable without allegation and proof of special damage, the question is whether, in law, there can be a conspiracy between husband and wife. Husband and wife, at common law, are regarded as one person, and to constitute a conspiracy there must be at least two persons. In People v. Miller, 82 Ca. 107, the defendant and his wife were convicted of conspiracy, and the court reversed the judgment, saying : " Defendant H. Miller appeals. His sole contention here is, that the information does not accuse him of any offense, because a man and his wife, being in law but one person, no prosecution for a conspiracy can be maintained against them. That such was the rule of the common law, we cannot doubt, and we find nothing in the code or statutes of this state to indicate an intention of the legislature to change it." At common law husband and wife are regarded as one person, and the legal existence of the wife is suspended during marriage, or, in other words,

is merged in that of the husband." 15 Am. & Eng. Ency., p. 790, and authorities in note 1. "It is a legal presumption that whatever the wife does in the presence of her husband is done under his coercion." Rather *et ux.* v. The State, 1 Ala. 132, 138; Hensley v. The State, 52 Ala. 10; Commonwealth v. Pratt, 126 Mass. 462. In the present case, if plaintiff and her husband conspired, it must have been in the latter's presence. In 1 Russell on Crimes, 6th ed., p. 152, the author says: "A prosecution for a conspiracy is not maintainable against a husband and wife only, because they are esteemed but as one person in law, and are presumed to have but one will." The common law so far as applicable and of a general nature, is the law of this state, and the act of 1874, Hurd's Rev. Stat., c. 68, does not in the least modify the common law in respect to the matter under discussion. We are of opinion that an indictment against plaintiff and her husband only, for conspiracy, could not be maintained. Counsel for plaintiff has urged numerous objections to rulings of the court excluding evidence, but we find no reversible error in any of such rulings, or anything in the excluded evidence which, if admitted, would affect the question whether the words charged as slanderous are actionable.

Our conclusions being as heretofore stated, it is unnecessary to consider the objections of counsel in regard to instructions, or the evidence of the defendant's witnesses, which consists mainly of express denials of the utterance by the defendant of the words relied on by the plaintiff. If the words are not actionable, the verdict could not legally have been other than it is. The judgment will be affirmed.

*Affirmed.*