Orville E. Welch, Administrator of Estate of Anna M. Davis, Deceased, Appellant, v. Daniel G. Davis, Executor of Last Will and Testament of John L. Davis, Deceased, Appellee.

Gen. No. 9,694.

Opinion filed November 2, 1950.
Released for publication November 28, 1950.

FRANK L. WOLF, of Sullivan, and A. L. YANTIS, of Shelbyville, for appellant; FRANK L. WOLF, of Sullivan, of counsel.

JOHN J. BAKER, of Shelbyville, for appellee.

MR. JUSTICE WHEAT delivered the opinion of the court.

This is an appeal from a judgment notwithstanding the verdict entered in favor of defendant appellee, Daniel G. Davis, executor of the will of John L. Davis, deceased, in an action for wrongful death brought by plaintiff appellant Orville E. Welch, administrator of the estate of Anna M. Davis, deceased. The jury awarded plaintiff $14,000.

There is no substantial dispute as to the facts. It appears that on March 18, 1948, John L. Davis shot his wife, Anna M. Davis, with a revolver and immediately thereafter shot himself. Both died. The jury by its verdict determined that the wife was the

survivor, and for the purpose of this opinion it may be assumed that this is true. Wanda Maurine Benson, for whose benefit the action was brought, was a minor daughter of Anna M. Davis by a prior marriage and a step-daughter of John L. Davis. It is undisputed that the mother had been supporting and educating the daughter during her married life with John L. Davis. Defendant contends that under the Injuries Act, an action can be maintained for wrongful death only in the event that, if death had not ensued, the party injured could have maintained the action, and that in the instant case if the wife had lived she could not have maintained an action against her husband based on a tort, by reason of which no action can be maintained by her administrator. This presents the major issue in the case.

The Injuries Act (sec. 1, ch. 70, Ill. Rev. Stat. 1947 [Jones Ill. Stats. Ann. 38.01]) provides: "Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony."

██ In construing this section, the Supreme Court of Illinois, in the case of *Biddy v. Blue Bird Air Service,* 374 Ill. 506, 513, has stated: "At the common law no action could be maintained against any person or corporation causing .the death of another by wrongful act, negligence or default. (*Crane v. Chicago & W. I. Ry. Co.,* 233 Ill. 259.) Section 1 of the Injuries Act permits the personal representative of a deceased

71

person to bring an action against the person or corporation whose wrongful act, negligence or default caused the death, but the liability there created depends upon the condition that the deceased, at the time of his death, had he continued to live, would have had a right of action against the same person or persons for the injuries sustained. If the deceased had no right of action at the time of his death, the personal representative has none under the Injuries Act.'' (See also *Mooney v. City of Chicago,* 239 Ill. 414; *Clarke v. Storchak,* 384 Ill. 564; *Howlett v. Doglio,* 402 Ill. 311.)

As opposed to the above construction plaintiff contends that he may properly recover under the Injuries Act, even though Mrs. Davis, were she alive, might not be able to recover from Mr. Davis or his estate for her injuries. His argument begins with an extended analysis of cases from this and other jurisdictions announcing the principle that the statute does not merely transmit to the personal representative the cause of action for personal injuries which the deceased may have had prior to his death, but creates an entirely new cause of action in the personal representative for the benefit of the deceased's next of kin. In support of this proposition plaintiff has devoted a substantial part of his brief to a discussion of the following cases and authorities: 16 Am. Jur., Death, sec. 61; *Ohnesorge v. Chicago City Ry. Co.,* 259 Ill. 424; *Prouty v. City of Chicago,* 250 Ill. 222; *Maney v. Chicago B. & Q. R. Co.,* 49 Ill. App. 105; *Devine v. Healy,* 141 Ill. App. 290; *Thomas v. Star & Crescent Milling Co.,* 104 Ill. App. 110; *Pease v. Rockford City Traction Co.,* 204 Ill. App. 120, as well as cases from other jurisdictions.

It may be conceded from these decisions, as well as from the statute itself, that the elements of damage to be considered in an action under the Injuries Act are those sustained by the next of kin as a result of the death, while the damages recoverable by the in-

jured person during his lifetime are those which he sustained as a result of the injury. Necessarily, the injured party could not, while living, recover damages for his own death. While the cause of action which he had while living arose from the same wrongful act as the cause of action which the next of kin may have under the Injuries Act, the actions differ so far as the nature and amount of damages recoverable are concerned, and in that sense the proceeding under the statute is a "new" cause of action. It does not, however, follow from this analysis, that recovery under the Injuries Act may be separated from the decedent's right to recover, had she lived. The contrary is the clearly announced law of this State, by reason of which it is unnecessary to discuss the case on which plaintiff principally relies, to-wit: *Kaczorowski v. Kalkosinski*, 321 Pa. 438, 104 A. L. R. 1267. In addition to this it is noted that the Pennsylvania Act is dissimilar to the Illinois Act, in that there is no provision therein analogous to the Illinois Act that there shall be liability only in such cases, wherein, if death had not ensued the injured might have maintained the action.

It remains to be determined whether or not an action can be maintained by a wife against a husband for personal injuries resulting from his wrongful conduct. It is conceded that this subject has not been passed upon by the reviewing courts of Illinois. Since 1874, when the Act was passed by the legislature entitled "Rights of Married Women" (ch. 68, sec. 1 to 21, Ill. Rev. Stat. 1949 [Jones Ill. Stats. Ann. 64.01–64.21]) no Illinois decision has been rendered on the precise point. The general rule is announced in 89 A. L. R. 118, supplemented in 160 A. L. R. 1402, as follows:

"Recent cases have adhered to what has been designated as 'the great weight of authority' and hold

that statutes conferring additional rights on married women and the right to sue separately in their own names for redress of wrongs concerning their separate property and personal security confer no right on either spouse to sue the other for personal injuries."

A few cases following this rule may be noted. In *Keister v. Keister,* 123 Va. 157, 96 S. E. 315, it was held that a wife has no right to sue her husband for assault under a statute providing "a married woman may contract and be contracted with, sue in the same manner and with the same consequences as if she were unmarried" and that, therefore, her personal representative had no right of action against her husband for wrongful death. Likewise, in the case of *Demos v. Freemas,* 43 Ohio App. 426, 183 N. E. 395, it was held that, under an Injuries Act substantially the same as the Illinois Act, no action could be maintained by the administrator of a deceased wife against her husband who shot and killed her. And in the case of *Hovey v. Dolmage,* 203 Iowa 231, 212 N. W. 553, the court decided that the administrator of the estate of a deceased wife could not maintain an action for damages resulting in her death caused by gunshot wounds intentionally inflicted by the husband, because the wife could not have maintained the action had she lived, notwithstanding a statute providing: "When any woman receives an injury caused by the negligence or wrongful act of any person, she may recover for loss of time, medical attendance and other expenses incurred as a result thereof, in addition to an element of damages recoverable by law." On the illusive subject of intent the court said: "It would have been an easy matter for the legislature if it had intended to restore the status of married women as to their right to maintain actions against their husbands for damages, to that of un-

74

married women, to have so stated in clear language, and not have left the matter to doubt or judicial construction.'' The Illinois cases cited by present defendant to support this proposition are of two classes: those in one group were decided before the passage of the Act of 1874; the subsequent cases ignore the Act. *Main v. Main,* 46 Ill. App. 106 (1892), related to an action by a wife against her husband for malicious prosecution and false imprisonment. The court stated: ''At the common law neither the husband nor wife could maintain an action for damages against the other for an assault or battery, no matter how aggravated, though the offending party was liable *criminaliter.*'' The further observation is made: ''Sound considerations of public policy would forbid a change of the common law, and unless the statutory provisions referred to have by direct terms or by necessary inference abrogated the rule, we must hold it still in force. It is clear this has not been done, expressly, and we find no sufficient warrant for saying it has been done by implication.'' In evaluating this decision it must be noted that the decision of the Supreme Court in *Chestnut v. Chestnut,* 77 Ill. 346 (1875) was quoted as authority for the court's decision, and that reliance was also placed upon the earlier cases of *Emerson v. Clayton,* 32 Ill. 493 (1863); *Howarth v. Warmser,* 58 Ill. 48 (1871) miscited in the opinion as *Howard v. Warmser,* 55 Ill. 48; and *Martin v. Robson,* 65 Ill. 129 (1872). No mention whatever is made of the possibility that the Act of 1874 might be in conflict with the conclusion in the *Main* case.

It appears that prior to 1861, the date of the enactment of the first of three statutes concerning the status and rights of married women, the common law was followed in Illinois, prohibiting actions of any kind between spouses. The Act of 1861 (Public Laws 1861, p. 143) was substantially the same as sec. 9 of the

present Act, providing that a married woman may own and convey in her own right both real and personal property in the same manner that the husband can as to property belonging to him. In 1869, married women were further emancipated by the enactment of a statute consisting of one section (Public Laws 1869, p. 255) substantially the same as secs. 7 and 8 of the present Act, providing that a married woman may receive, use, and possess her own earnings and sue for the same, provided that she shall have no right to compensation for labor performed for her minor children or her husband.

In 1874, these two Acts were superseded by a Married Woman's Act substantially identical with that now in force and very considerably broader in scope than the two prior acts taken together. The progressive inroads upon the common-law rule resulting from these enactments, with particular regard to contract actions and actions generally respecting property, are reviewed in *Clark v. Clark,* 49 Ill. App. 163 (1892); *Crum v. Sawyer,* 132 Ill. 443 (1890); *Snell v. Snell,* 123 Ill. 403 (1888), and *Johnson v. Johnson,* 239 Ill. App. 417 (1926). It is noted that in the latter case, *Chestnut v. Chestnut, supra* (which is cited as authoritative in the *Main* case) is clearly regarded by the court as a decision construing the Act of 1869 and not that of 1874.

From the above it is apparent that no Illinois case, referring to the present Act, specifically settles the question as to the right of a wife to sue a husband by reason of his tortious conduct. To sustain plaintiff's position in this case, this court would be compelled to resort to the questionable device of judicial construction. It is contended that ''every person ought to find a certain remedy in the law for all injuries and wrongs which he may receive in his person, property, or reputation,'' in accordance with the Constitution.

Any such argument should be addressed to the legislature, and not to the Courts. It might well be noted, however, that this reference to the Constitution is more of a statement of philosophy than a rule which can be used to solve cases, for if it is not an actionable civil wrong for one spouse to injure another, the Constitution is not violated.

It remains to decide if this court should now hold that the Married Woman's Act should be interpreted so as to permit this suit to be maintained. This raises no question of usurping the function of the jury because no issue as to the essential propriety of the action was or should have been presented to the jury. Since our legal system does not provide for a jury issue:—Is this the kind of an action which should be maintainable?

In tort cases it is essential that the principal issue raised be that of fault, by reason of which it is clearly indispensable that the opponents be in fact adversary parties. Collusion, duplicity, and hypocrisy, all frowned upon in our culture might well be the consequences of husband and wife tort litigation. Although such is not present in the instant case, where can a line be drawn so as to distinguish this case from one wherein liability might be charged by a wife against her husband for wilful and wanton misconduct in the operation of an automobile resulting in an injury to the wife, and wherein insurance most certainly would be a factor? Reference may well be made again to the language in *Main v. Main (supra)*: "Sound considerations of public policy would forbid a change of the common law, and unless the statutory provisions referred to have by direct terms or by necessary inference abrogated the rule, we must hold it still in force. It is clear this has not been done, expressly, and we find no sufficient warrant for saying it has been done by implication."

██ It is the opinion of this court that in the instant case, the plaintiff had no cause of action.

██ It is urged that because one judge of the circuit court denied a motion to strike the complaint upon a motion asserting the same grounds as herein discussed, the trial judge was estopped to grant the later motion for judgment notwithstanding the verdict. It needs no citation of authorities or extended discussion to support the statement that a complaint failing to state a cause of action will not support a judgment, or that in any event the error in failing to grant the motion to strike the complaint, having been presented for review, may be passed upon by this court, in which event the same result might be effected.

The complaint was insufficient to support a judgment for the plaintiff and the trial court is affirmed.

*Judgment affirmed.*