Marjorie Brandt, Appellant, v. Joseph Keller, Appellee.

Gen. No. 45,433.

Opinion filed April 1, 1952. Rehearing denied April 14, 1952. Released for publication May 23, 1952.

JOSEPH D. RYAN, and LOUIS P. MILLER, both of Chicago, for appellant.

ROSS, BERCHEM & SCHWANTES, of Chicago, for appellee; JOHN C. MENK, of Chicago, of counsel.

MR. JUSTICE SCHWARTZ delivered the opinion of the court.

■ This case involves the right of a wife to sue her husband for personal injuries sustained while a passenger in a car driven by her husband. The trial court decided against plaintiff and dismissed her suit. At common law a tort committed by one spouse against the person of the other could not give rise to a cause of action in favor of the injured spouse. This is still the law of Illinois unless the rule has been changed by the Married Women's Act of 1874 (Ill. Rev. Stat. chap. 68, secs. 1–21, inclusive) [Jones Ill. Stats. Ann. 64.01, 64.21].

Plaintiff relies on that Act. Her counsel concede that the Act does not give a corresponding right to the husband. The question is, therefore, whether the Act removes the common-law disability of the wife but preserves it as to the husband. Such a swing of the pendulum would certainly crash through the walls of grandfather's clock even though he himself wrote the Act. However, if the language of the Act expresses the intention to remove the disability of the wife and not that of the husband or should, pursuant to the rules of statutory construction, be thus interpreted, we must so find.

Recently, the Supreme Court of Illinois decided the case of *Welch, Admr. v. Davis,* 410 Ill. 130, 101 N. E. (2d) 547, sustaining the right of the administrator of a wife's estate to sue the husband's estate pursuant to the statute granting a right of action for wrongful death. The court there discussed matters so closely related to the issues involved here that we must first consider carefully the effect of that case. Paragraph 1 of the Wrongful Death Act fixes the limits for this type of action as that which "would, if death had not ensued, have entitled the party injured to maintain an action." To bring the case within the limits thus imposed, plaintiff relied on two basic grounds: (1) that the Wrongful Death Act created a new cause of action which was not defeated by a personal immunity which the husband might have had if the parties had lived; and (2) that under the Married Women's Act here in question, the disability of the wife had been removed. The Appellate Court, Third District, found no merit in either point. (*Welch v. Davis,* 342 Ill. App. 69, 95 N. E. (2d) 108.) The Supreme Court, however, held with plaintiff on the first point and did not decide the second. It held that the Wrongful Death Act created a new and independent cause of action, and that this was not a derivative or secondary action circumscribed by all the limitations

20

and disabilities which might have been imposed upon the intestate had she lived. The court pointed out that this was not a suit by one spouse against the other, and that an immunity *unrelated to the character or quality of the tort or wrongful act* which caused the death should not be imported into an action for wrongful death. The court expressly stated that it did not undertake to determine whether that immunity survived under circumstances other than those there existing, and made clear that the decision was not to be taken as authority on the issue presented in the instant case. The opinion points out, however, that no Illinois case has settled the right of a wife to sue her husband in tort and we, therefore, consider the case before us to be one of first impression.

We have also considered an opinion rendered by the First Division of this court January 21, 1952, in *Tallios v. Tallios,* 345 Ill. App. 387, holding that the immunity of a husband does not extend to the defendant in a suit charging that the husband as agent of defendant negligently injured the wife. As in the case of *Welch, Admr. v. Davis, supra,* the court relied on the reasoning of Justice Cardozo in the case of *Schubert v. August Schubert Wagon Co.,* 249 N. Y. 253, which held that the basis of liability against a principal was the tortious act; that the liability of the principal was not derived from the liability of the agent, and that the principal may be liable for an act with respect to which the agent has a personal immunity. As in *Welch, Admr. v. Davis, supra,* the court did not pass upon the question as to whether the wife may sue her husband for personal injury.

 It is urged upon us with ardent advocacy that the language of the 1874 Act is clear; that it explicitly removes the disability of the wife; that it needs no interpretation; that he who runs may read, and that a court should not read into the Act what is not there

21

written and revive any relic of that barbarous day when women were "chattels and the slaves of men." We must therefore first examine the precise wording of the statute to determine if it supports this position of plaintiff. The pertinent portion reads as follows:

"That a married woman may, in all cases, sue and be sued without joining her husband with her, to the same extent as if she were unmarried, and an attachment or judgment in such action may be enforced by or against her as if she were a single woman."

Plaintiff's counsel argues that the phrase "in all cases" means that she may sue in every case, whether it is her husband or a third person, just as an unmarried woman might. Courts must not, they say, in any way circumscribe the meaning of the words "in all cases." A careful scrutiny of the Act reveals that if that was the intention, it was not carefully nor clearly drawn to effect that purpose. The Act first states that a married woman may in all cases sue and be sued *without joining her husband with her.* This clearly removes the disability of the wife so far as the technical need of joining her husband with her in any action is concerned. If anything, that language emphasizing as it does the joinder of the husband, refutes the idea that a suit against the husband was in contemplation. There is a substantial distinction between eliminating a formal requirement for the right to maintain a suit and removing a disability with respect to a suit against a particular person. The area within which a married woman may sue "without joining her husband" is thus defined—"to the same extent as if she were unmarried." Do these words clearly express an intention to include the right of a wife to sue her husband? Extended to state that intention, the language would read: "We grant married women the right, without joining their husbands with them, to sue their husbands to the

22

same extent as unmarried women might sue their husbands." It is obvious that the Act is not so plain on its face that it needs no interpretation. It should be interpreted according to the familiar rules of statutory construction.

Counsel for plaintiff have admitted that the Act gives no general right of interspousal actions for torts against the person. It is difficult to see how it could be otherwise. In order to accomplish that equalitarian result, we would have to read into the law the elimination of the common-law disability of the husband and that would in effect distort the provisions of the statute into a form which would make its general phraseology and its context absurd. It would obliterate the phrases "without joining her husband" and "to the same extent as if she were unmarried." It would make a new law. Unless we are willing to usurp the function of the legislature, we must accept the proposition that this Act cannot be stretched to include a right of action by husband against wife.

██ ██ The primary rule of statutory construction is to give effect to legislative intent. For that purpose, courts consider the circumstances and conditions under which legislation is enacted and the evils or injustices sought to be corrected. *Hoyne v. Danisch,* 264 Ill. 467; *People v. Kipley,* 171 Ill. 44; *Hogan v. Akin,* 181 Ill. 448; *Krome v. Halbert,* 263 Ill. 172; *Anderson v. City of Park Ridge,* 396 Ill. 235, 254. If we examine the language of the entire Act, that is, the provisions in addition to those of the paragraph heretofore stated, we must conclude the intention was to eliminate the disabilities *peculiar* to married women. The disability here under consideration is not one peculiar to the wife. It is a disability of spouses, a disability common both to husband and wife, and in that respect does not have the discriminating odium attached to other disabilities. Where this same statute in other sections

23

creates a right in the wife it is, wherever appropriate, followed by a reciprocal right in the husband. Thus, in paragraph 3 it is provided that when a husband deserts his family, the wife may prosecute or defend in his name and "under like circumstances, *the same right shall apply to the husband . . . .*" (Italics ours.) (See also sections 5, 8 and 11.)

The object of equality is defeated by holding that under the Act, the wife would have the right to sue her husband in tort for injuries sustained by her, and at the same time deny to him a corresponding right.

As we have stated, *Welch, Admr. v. Davis,* 410 Ill. 130, considers this question a matter of first impression. It is, however, significant that no court of Illinois in the seventy-seven years since the passage of the Act has considered that it gave a right to the wife to sue her husband. Indeed, several courts have indicated otherwise, *although not deciding the question. Meece v. Holland Furnace Co.,* 269 Ill. App. 164; *Merrill v. Marshall,* 113 Ill. App. 447. The Supreme Court of Wisconsin likewise had occasion to declare that the law of Illinois did not give a right to the wife to sue her husband. *Buckeye v. Buckeye,* 203 Wis. 248, 234 N. W. 342; *Forbes v. Forbes,* 226 Wis. 477, 482, 277 N. W. 112. These cases are correctly distinguished by plaintiff's counsel, and are referred to only for the general proposition that where there has been occasion for courts to comment, it has been assumed that the Act did not give the wife the right to sue her husband for a tort committed against her person. Moreover, not only has there been no precedent, but no suit directly involving the right of a wife to sue her husband for personal injuries has ever been brought in Illinois so far as we are advised. This was a period in which personal injury actions zoomed from almost zero to many hundreds of thousands. Undoubtedly, there must have been a great number of suits which could have been

24

brought but were not, on the assumption that in Illinois one spouse could not sue the other for a tort committed against the person. The only other conclusion would be that an astounding stupor had fallen on the alert and vigorous lawyers who practice in this field. It is fair to conclude that there was a concensus of all who had to do with the matter—lawyers, judges and others —that interspousal suits for torts against the person were not allowed in this State. Kent in his Commentaries, 12th Ed., vol. 1, p. 527, says: "In the construction of statutes, the sense which the contemporary members of the profession had put upon them is deemed of some importance . . . ."

If we look to other jurisdictions, we find that almost all the States have adopted legislation on the same subject, but there is no uniformity in the language used. A majority of the States, perhaps a very substantial majority, has held that statutes somewhat similar did not give the wife the right to sue her husband. The cases which hold to the contrary are referred to as cases following the minority rule. The decisions have been assembled in Annotations in 33 A. L. R. 1406, 89 A. L. R. 118, and 160 A. L. R. 1406. The most important precedent is *Thompson v. Thompson,* 218 U. S. 611. There, the court construed a statute of the District of Columbia which granted married women the right to sue separately "for torts committed against them, as fully and freely as if they were unmarried . . . ." The majority of the court held that this statute did not give the right to plaintiff to sue her husband in tort. The court there said, p. 616:

"By this District of Columbia statute the common law was changed, and in view of the additional rights conferred upon married women in section 1155 and other sections of the Code, she is given the right to sue *separately* for redress of wrongs concerning the same.

That this was the purpose of the statute, when attention is given to the very question under consideration, is apparent from the consideration of its terms. . . . The statute was not intended to give a right of action as against the husband, but to allow the wife, in her own name, to maintain actions of tort which at common law must be brought in the joint names of herself and husband.

"This construction we think is obvious from a reading of the statute in the light of the purpose sought to be accomplished. It gives a reasonable effect to the terms used, and accomplishes, as we believe, the legislative intent, which is the primary object of all construction of statutes."

A minority opinion, with perhaps a preponderance of eminence, as counsel contend, held to the contrary view, but the majority decision has persisted as a proper interpretation since it was rendered in 1910. Congress has passed no Act changing the law as stated in that decision.

The case which involves a statute most closely resembling the Illinois statute is that of *Willott v. Willott,* 333 Mo. 896, 62 S. W. (2d) 1084. The Missouri statute reads: "A married woman may, in her own name, with or without joining her husband as a party, sue and be sued . . . ." The court held that this meant that the wife could "bring any action which under a state of facts authorizing her to sue he could have brought." In Ohio, the statute provides that a wife may enter into contracts with her husband and that she may "sue and be sued as if she were unmarried." Notwithstanding the broad language of the last quoted section, it has been held in Ohio that a wife cannot maintain an action against her husband, nor a husband against the wife, for personal injury. *Damm v. Elyria Lodge,* Ohio App., 9th Judicial Dist., No. 1242;

26

*Finn v. Finn,* 19 Ohio App. 302; *Leonardi v. Leonardi,* 21 Ohio App. 110, 153 N. E. 93; *Tanno v. Eby,* 78 Ohio App. 21, 68 N. E. 813. An examination of those cases which have allowed the action reveals that the statutes involved either explicitly allowed the wife to sue her husband in tort, or one spouse to sue another, or the language was much broader than that in Illinois, and the words "without joining her husband" were not used.

The distinction between disabilities peculiar to the wife and one applicable to both spouses has been recognized in a number of States. A statute of the State of Washington reads: "All laws which impose or recognize civil disabilities upon a wife, which are not imposed or recognized as existing as to the husband, are hereby abolished . . . ." This Act was construed to put husband and wife on an equal footing. *Schultz v. Christopher,* 65 Wash. 496, 118 P. 629. Likewise, in *Strom v. Strom,* 98 Minn. 427, 107 N. W. 1047, the court holds that the purpose was to place both husband and wife on the same level. In *Lillienkamp v. Rippetoe,* 133 Tenn. 57, 179 S. W. 628, the Act provided that married women should be fully emancipated from all disability on account of coverture. The court nevertheless held that the disabilities which were intended to be removed were those applicable to married women as such, and not those disabilities common to both husband and wife. The strongest case is that of *Austin v. Austin,* 136 Miss. 61, 100 S. 591. The Mississippi statute provided that a married woman should be fully emancipated from all disability on account of coverture, may sue and be sued, with all the rights and liabilities incident thereto, as if she were not married, and that "a husband and wife may sue each other." The court there said, pp. 71–72:

"Our Constitution and statutes on the subject were enacted for the purpose of striking down the inequal-

ities existing between husband and wife. The intent was to put the wife on the exact equality with her husband—to emancipate her from the common-law slavery to her husband . . . . At common law there was no right of action either by husband or wife against the other for a personal tort. There was absolute equality in that respect. Therefore there was no occasion to emancipate the wife with reference to such torts, because the husband was under the same sort of disability as the wife.

"If appellant's contention were sound, we would have the novel situation of the wife having a cause of action against her husband for a personal tort, while the husband would have no such right against his wife; for there is nothing either in our Constitution or statutes which gives any such right to the husband."

██ ██ A rule of construction subordinate to those we have here considered is that statutes in derogation of the common law or which create a new right of action must be strictly construed. *Walter v. Northern Ins. Co. of N. Y.*, 370 Ill. 283; *Anderson v. Board of Education*, 390 Ill. 412. Plaintiff's counsel cite *Chicago, B. & Q. R. Co. v. Dunn*, 52 Ill. 260, as being in opposition to that rule of construction. Plaintiff is correct, but later cases again approve the rule, and it is applicable here. It is only an expression of the reasonable proposition that where a long standing rule has been accepted by the community and the legislature has not acted to change it, the courts should not innovate. We have heretofore considered the fact that the generations which have followed the passage of the Married Women's Act have assumed that it did not authorize a personal injury suit by a wife against her husband.

There are aspects of this question which are in the main irrelevant, but which nevertheless are compelling motivations in the decisions. The opinions of various courts reveal that this issue involving, as it does, a

relationship of great significance to society, arouses strong emotions and feelings. The arguments for removing the disability stress the unfairness of the common law. Even at common law, however, there was an effort to attain equality within the confines of the prevailing concept of the marital relationship and the husband was subjected to a strong discipline in his control of the wife's property. No such inequality existed as would result here if we accepted plaintiff's interpretation of the statute. There were, in fact, many exceptions to what is assumed to have been the husband's absolute rights. An examination of the ancient and outmoded work of Clancy on ''Husband and Wife,'' 1828, ''First American from the Third London Edition,'' Book 3, will reveal these exceptions. It serves no good purpose, however, to discuss the common law in this respect. Every society has its own peculiar customs and rules regulating the relations between the sexes, and to outsiders they often seem strange and unreasonable. What will the historians say of our society —reviewing the multitude of divorce cases which clog the courts; the hundreds of thousands of ''orphans'' in institutions or put out to board who are not orphans at all but children of separated parents, and the violent and often obscene marital contests in court. To add to this area of confusion and litigation is still a debatable question of public policy.

There is frequently injected into the consideration of this question, the prospect of collusion between husband and wife against an insurance company. Thus, in *Welch, Admr. v. Davis, supra,* the Supreme Court referring to the Appellate Court, Third District, opinion, said:

''Relying on considerations of policy stemming from the possibility of collusion in tort actions between spouses where 'insurance most certainly would be a

29

factor,' the court held that the statute does not authorize a tort action by a wife against her husband.''

In their analysis of the opinion of the Appellate Court in that case, counsel for plaintiff in their brief in this court said:

"We will not burden the court with a further analysis of the case of *Welch v. Davis,* 342 Ill. App. 69. The opinion is short and to the point; there is no escape from the conclusion that the court in that case was motivated by a misplaced desire to protect insurance companies, rather than by a realistic appraisal of the law as it stands today.''

The Appellate Court in that case stressed the prospect of collusion between husband and wife where a third party was involved. The court's concern was with *collusion,* not the protection of insurance companies. We do not agree with the court as to the relevance of that position, because the risk of collusion is involved in many well recognized actions as one of the hazards in the administration of justice. It is true that in a particular case, perhaps the one under consideration, the insurance company may stand to be the loser if we should hold that the wife has a right to sue her husband. However, that would be so only for a very short period, and a question of important public policy is not to be decided on that transitory basis. It is a simple matter for insurance companies to exclude from coverage such risks or to charge additional premiums therefor. In reality, insurance companies make their profit by covering risks, and to add another risk is only to give them that much additional merchandise to sell at a profit. In our opinion, the argument is not relevant.

█ Counsel for plaintiff have argued that the right of a wife to sue for a tort committed against her person

30

is a right of property and that its denial is violative of both the Illinois and Federal Constitutions. It is of course admitted that under the law of Illinois prior to the Married Women's Act, one spouse could not sue another. No constitutional question could have arisen if that Act had not been adopted. The entire basis of plaintiff's argument falls, if the Act does not change the common law. The relationship between the sexes with respect to their property and their status has so long been recognized as subject to control of the legislature, we would, if so disposed, rather announce boldly that the time has passed for continuance of the common-law rule and judicially legislate it out of existence, than to engage in what we think is specious reasoning with respect to a constitutional question.

It is argued by counsel that inasmuch as married women had the right, by prior legislation, to sue with respect to property, the language of the Act of 1874 would be meaningless, unless it were meant to apply to a tort. A reading of the entire Act reveals it was intended to augment the meager sections of the Acts of 1861 and 1869 relating to married women. Many reasons may have motivated the legislature in adopting this Act. Even assuming that the right to sue with respect to property was adequately covered by the Acts of 1861 and 1869, complete judicial construction was still lacking, and it could well have been intended by this Act to make clear the legislative intent with respect to such formal requirements as the joinder of the husband. There was adequate motive for passage of the Act, without considering it as including the right of a wife to sue her husband for personal injury.

In the final analysis, plaintiff's case rests on the proposition that there is no longer any reasonable social value in the common-law rule of public policy prohibiting interspousal suits for personal injuries,

31

and in order to abolish it, the courts should, seventy-seven years after passage of the Married Women's Act, so construe that Act as to empower a wife to sue her husband for a tort committed against her person. This is not a matter involving method or practice or those interstices in the law where courts have latitude. A court is not the forum to consider the effect of the proposed new type of litigation upon the marital status and mold its opinion to form a public policy so determined. Public opinion cannot be consulted by a court nor can social investigators be engaged to inquire into such matters. We must adhere to the more traditional method of construction. So examined, we are convinced that the Act of 1874 did not grant to the wife the right to sue her husband for a tort committed against her person. The judgment of the trial court is affirmed.

*Judgment affirmed.*

TUOHY, P. J. and ROBSON, J., concur.