Orville E. Welch, Admr., Appellant, *vs.* Daniel G. Davis, Exr., Appellee.

*Opinion filed September 21, 1951—Rehearing denied Nov. 19, 1951.*

Frank L. Wolf, of Sullivan, and A. L. Yantis, of Shelbyville, for appellant.

John J. Baker, of Shelbyville, for appellee.

Mr. Justice Schaefer delivered the opinion of the court:

The facts are not in dispute. On March 18, 1948, John L. Davis, a resident of the city of Windsor, in Shelby County, shot his wife, Anna M. Davis, with a revolver. Immediately thereafter, he shot and killed himself. Mrs. Davis died a few minutes later than her husband. Anna Davis was survived by Wanda Maurine Benson, a minor daughter by her first marriage. For all practical purposes, Anna Davis was the sole support of her daughter, her only next of kin, supporting her from her own earnings.

Plaintiff, as administrator of the estate of Anna M. Davis, brought this action in the circuit court of Shelby County for wrongful death against the defendant, the executor of the will of John L. Davis. A jury returned a verdict awarding plaintiff $14,000. Defendant's motion for a new trial was overruled, his motion for judgment notwithstanding the verdict was granted, and judgment was rendered for defendant and against plaintiff. The Appellate Court for the Third District has affirmed. (*Welch v. Davis,* 342 Ill. App. 69.) We granted plaintiff's petition for leave to appeal.

The Appellate Court based its decision denying recovery upon its construction of two statutes: The Married Women's Act (Ill. Rev. Stat. 1949, chap. 68, pars. 1 to 21 incl.) and the Wrongful Death Act. (Ill. Rev. Stat. 1949, chap. 70, pars. 1, 2.) As to the Married Women's Act, the court pointed out that "it is apparent that no Illinois case, referring to the present Act, specifically settles the question as to the right of a wife to sue a husband by reason of his tortious conduct." Relying on considerations of policy stemming from the possibility of collusion in tort actions between spouses where "insurance most certainly would be a factor," the court held that the statute does not authorize a tort action by a wife against her husband. As to the Wrongful Death Act, the court held that, because the wife could not have maintained a tort action against her husband during her lifetime, her administrator cannot maintain an action for her wrongful death. This construction imports into the statutory right to recover for wrongful death the common-law immunity of a husband from actions brought by his wife.

The questions here involved have not previously been presented for consideration in Illinois. In the view we take of the case, it is unnecessary to consider whether, under any and all circumstances, the common-law immunity of the husband survives despite the Married Women's Act.

For, whatever may be the present vitality of that immunity in other contexts, no reason exists for reading it into the Wrongful Death Act to bar recovery in this case.

The argument that recovery should be denied is based upon the language of section 1 of the Wrongful Death Act. That section provides: "Whenever the death of a person shall be caused by wrongful act, neglect or default, and the act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages in respect thereof, then and in every such case the person who or company or corporation which would have been liable if death had not ensued, shall be liable to an action for damages, notwithstanding the death of the person injured, and although the death shall have been caused under such circumstances as amount in law to felony." Ill. Rev. Stat. 1949, chap. 70, par. 1.

Obviously, this provision of the statute prevents automatic recovery for every death. It incorporates into the statutory right of action the familiar concepts of tort liability,—negligence, contributory negligence, and the like. The question in this case is whether the statute goes further, and embodies not only common-law rules concerning the quality of conduct which will give rise to a cause of action, but also those personal immunities from liability which the common law developed.

Apart from the immunity of the sovereign, which today with us rests upon constitutional sanction, common-law immunities were few. The exceptions to the general rule that liability follows fault were based upon principles of logic and reason. In the main they rested upon personal disability. Infancy and lack of mental competence loom large among the common-law immunities from liability. Closely related were the immunities attributable to the family relationship, among them the one with which we are here concerned, the immunity of the husband from liability at the suit of his wife. The common-law basis for

this immunity was firmly rooted in feudal economy and was buttressed by logic. Husband and wife were one at common law, it has been said, and the husband was that one. The wife could own no separate property, nor could she maintain an action independently. Whatever rights of action she might have were enforceable only by her husband. 1 Blackstone's Commentaries, (Wendell's Ed.) 441.

Two obstacles thus combined at common law to preclude an action by a wife against her husband. First, there was the somewhat metaphysical difficulty concerning the parties: the husband, enforcing the right of his wife as plaintiff, would be suing himself as defendant; and, second, any recovery on behalf of the wife would immediately become the property of her husband, so that the action would have been a circuitous futility. Neither of those obstacles exists today. Everywhere they have been eliminated by statutes which permit married women to own property independently of their husbands and to sue in their own name. Prosser on Torts, sec. 99.

Quite apart from its abolition by statute, fictional unity of husband and wife is inapplicable in this case, as the parties plaintiff and defendant are neither wife nor husband but, instead (1) a child of the wife asserting an independent right to recover for a loss sustained by her alone and (2) the husband's executor. Any damages from the husband's estate would not return to the husband as they would in an action between living spouses at the early common law. The damages awarded by the jury were to compensate the minor child for a loss suffered by her, indeed, a loss suffered peculiarly by her. Neither the pain and suffering of the deceased, nor medical or other expenses attending her injury are proper elements of damage in a wrongful death action. Compensation in such an action is awarded only for the pecuniary loss occasioned by the death. *Hazel* v. *Hoopeston-Danville Motor Bus Co.* 310 Ill. 38; *Ohnesorge* v. *Chicago City Railway Co.* 259 Ill. 424.

The only support upon which the husband's immunity rests today is one which was developed, largely as an afterthought, to maintain the common-law immunity after its original justifications had been wiped out. Today the immunity can be based solely upon the ground that domestic tranquillity is fostered by the prohibition of actions by a wife against her husband. An immunity based upon the preservation of marital harmony can have no pertinence in this case, for here the marriage has been terminated, husband and wife are both dead, and the action is brought for the benefit of a third person.

In a parallel case, *Kaczorowski* v. *Kalkosinski,* 321 Pa. 438, it appeared that Martha Kalkosinski was a passenger in an automobile driven by her husband, Frank. An accident occurred in which both were killed. The wife's father, her sole surviving parent, brought an action against the administrator of Frank's estate, charging that her death was caused by her husband's negligence and that it deprived the father of her consistent contributions to his support. In Pennsylvania, the common-law immunity of the husband is recognized. The Wrongful Death Act of Pennsylvania, to the extent relevant, provided that "whenever death shall be occasioned by unlawful violence or negligence" an action may be maintained by the surviving spouse, children, or parents of the deceased. We note that, although this statute was modeled upon section 1 of Lord Campbell's Act, (9 and 10 Vict., chap. 93,) the latter provides a right of recovery when "the act, neglect, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action." In the *Kaczorowski case,* the court recognized the difference in the wording of the statutes but pointed out that Pennsylvania, in common with most jurisdictions, had previously interpreted its statute as if worded in the same manner, namely, to the effect that a right to recover must exist in the party injured when he died in order to entitle those named in the act to

sue. The Pennsylvania court said, "We have announced the principle that the statutory action is derivative because it has as its basis the same tortious act which would have supported the injured party's own cause of action. [Citations.] Its derivation, however, is from the tortious act and not from the person of the deceased, so that it comes to the parties named in the statute free from personal disabilities arising from the relationship of the injured party and tort-feasor. Since a negligent trespass of a husband upon the person of the wife does not cease to be an unlawful act, although the husband may be exempt from suit or liability as to *her* [citation,] it may, being a wrongful act, support an action in favor of other parties as against whom the husband has no such immunity and where no just concern compels extension of his immunity. The relation of husband and wife intervening between the tortious act and a third injured party ought not to defeat recovery simply because the wife cannot sue her husband for the tort to her. As to other parties, there may be an independent wrong for which recovery should be allowed. * * * *By the statute there is given an explicit and independent right of action to recover the damages peculiarly suffered by the parties named therein. * * * Keeping in mind therefore, the fact that this death statute is an attempt to compensate an independent wrong to the parties named in the statute, we are confronted with the problem as to whether we should withhold the right thus given by subjecting it to the incapacity which may have attended a suit by the daughter because of her relationship to the tort-feasor.* There is no reason why the fortuitous circumstances that the tort-feasor whose act deprived the parent of support happened to be the husband of the person who was injured by that act and who also furnished the support, should be a bar to recovery here. The disability of the wife to sue is personal. It does not inhere in the tort itself as is the case where she is guilty of contributory

negligence." The quoted observations apply with singular force to the factual situation presented in the case at bar.

The conclusion reached in the Pennsylvania case and similar cases was foreshadowed in *Schubert* v. *Schubert Wagon Co.* 249 N. Y. 253. In the *Schubert case*, Jessie Schubert, while on a highway was struck and injured by defendant's automobile which, at the time, was being negligently driven by her husband, an employee of defendant. The employer would have been liable had the driver of the car been a stranger to her instead of her husband. The Court of Appeals of New York, speaking through Chief Judge Cardozo, observed, "The disability of wife or husband to maintain an action against the other for injuries to the person is not a disability to maintain a like action against the other's principal or master. * * * An employer commits a trespass by the hand of his servant upon the person of another. The act, let it be assumed, is within the scope either of an express mandate or of an implied one. In either event, if the trespass is not justified, he is brought under a distinct and independent liability, a liability all his own. The statement sometimes made that it is derivative and secondary [citation] means this, and nothing more, that at times the fault of the actor will fix the quality of the act. Illegality established, liability ensues. The defendant, to make out a defense, is thus driven to maintain that the act, however negligent, was none the less lawful because committed by a husband upon the person of his wife. This is to pervert the meaning and effect of the disability that has its origin in marital identity. A trespass, negligent or willful, upon the person of a wife, does not cease to be an unlawful act though the law exempts the husband from liability for the damage. Others may not hide behind the skirts of his immunity. The trespass may be a crime for which even a husband may be punished, but, whether criminal or not, unlawful it remains. As well might one argue that an employer,

commanding a husband to commit a battery on a wife, might justify the command by the victim's disability. * * * In all this there is nothing at war with the holding of some cases that the remedy against the husband is denied altogether and not merely suspended during coverture. * * * We find no collision between the principle of liability established in this case and the principle of exemption established in actions against a husband. * * * Domestic Relations Law [citation] is explicit that 'a married woman has a right of action for an injury to her person, property or character * * * as if unmarried.' By authority and tradition, an exception has been engrafted upon this rule where the husband is defendant. We are not at liberty to extend it by dubious construction."

In *Robinson's Admr.* v. *Robinson,* 188 Ky. 49, 220 S.W. 1074, the court, holding that the administrator of a wife's estate could sue the husband in an action for wrongful death for the benefit of the children who survived their mother, observed that even the public policy assigned in some cases as the reason for denying the right of one spouse to sue the other for personal tort during the existence of the marital relation under the Married Women's Act enacted in most of the States could not be invoked, because the marital relation no longer existed.

Among additional authorities sustaining the right to sue the husband or his estate for causing the death of his wife are *Fitzpatrick* v. *Owens,* 124 Ark. 167, 187 S.W. 460, and *Russell* v. *Cox,* 65 Ida. 534, 148 Pac. 2d 221. Supporting the conclusion reached upon analogous but not parallel facts are *Cowgill* v. *Boock,* 189 Ore. 282, 218 Pac. 2d 445, *Ruiz* v. *Clancy,* 182 La. 935, 162 So. 734, and *Albrecht* v. *Potthoff,* 192 Minn. 557, 257 N.W. 377.

We are aware of authorities to the contrary. These decisions are opposed to the views expressed in *Kaczorowski* v. *Kalkosinski,* 321 Pa. 438, and the *Schubert case,* 249 N. Y. 253. In some jurisdictions, where wrongful death

statutes have been construed as making the ability of the injured person to recover damages, if death had not ensued, a condition of maintaining an action for his death, the courts have denied a right of recovery against a husband or his estate for acts of his resulting in the death of his wife. (See, 104 A.L.R. 1271, and authorities cited.) In *Hovey* v. *Dolmage*, 203 Ia. 231, 212 N.W. 553, a husband and wife both died the same day as a result of gunshot wounds intentionally inflicted by the husband. There, as here, the administrator of the wife's estate brought an action against the executors of the husband's will for damages accruing to next of kin as the result of the assault upon her by her husband. Recovery was denied upon the theory that since, at common law, the wife could not have maintained an action against her husband for personal injuries negligently or wilfully inflicted upon her by him, the wife's estate could not recover damages from the estate of the husband for the latter's act in assaulting and killing his wife. To like effect are *Wilson* v. *Brown*, 154 S.W. (Tex. Civ. App.) 322, *Wilson* v. *Barton*, 153 Tenn. 250, 283 S.W. 71, and *Keister's Admr.* v. *Keister's Exrs.* 123 Va. 157, 96 S.E. 315.

In *Demos* v. *Freemas*, 43 Ohio App. 426, 183 N.E. 395, relied upon by defendant, a husband shot and killed his wife. Thereafter, the administrator of the wife's estate brought an action for damages for wrongful death on behalf of two sisters and a brother of the deceased as her next of kin. Recovery was denied for the reason that, under the statutes of Ohio, the proceeds of a judgment in the action brought are for the exclusive benefit of the husband and only for the next of kin if there be no husband. The court pointed out that, although proof might disclose murder in some degree, the husband would not be barred from inheriting from his wife, since, in the absence of a statutory provision that murderers shall not inherit the property of their victims, the courts could not except murderers

from the operation of statutes of descent. The Ohio case does not sustain defendant's position.

We hold this action by the administrator to recover damages for the pecuniary loss suffered by the minor dependent daughter of Anna Davis is not within the contemplation of the common-law rule that a wife cannot sue her husband. Accordingly, the administrator of the wife's estate may maintain the present statutory action for wrongful death which derived from the wrongful act causing the death rather than from the person of the deceased.

The judgments of the Appellate Court and the circuit court of Shelby County are each reversed, and the cause is remanded to the circuit court, with directions to enter judgment upon the verdict.

*Reversed and remanded, with directions.*