Norma Lee JONES, Administratrix, Estate of Zelma Mae Pledger, Deceased, Appellant,

v.

Anderson PLEDGER, Sr., Administrator, Estate of John Pledger, Deceased, Appellee.

No. 19337.

United States Court of Appeals District of Columbia Circuit.

Argued Nov. 15, 1965.

Decided April 11, 1966.

Petition for Rehearing En Banc Denied May 20, 1966.

Mr. Barrington D. Parker, Washington, D. C., with whom Mr. George A. Parker, Washington, D. C., was on the brief, for appellant.

Mr. Jerome Shuman, Washington, D. C., with whom Mrs. Dovey J. Roundtree, Washington, D. C., was on the brief, for appellee.

Before BAZELON, Chief Judge, and PRETTYMAN, Senior Circuit Judge, and FAHY, Circuit Judge.

FAHY, Circuit Judge:

The administratrix of the estate of Zelma Mae Pledger sued the administrator of the Estate of John Pledger. John Pledger was the husband of Zelma Mae Pledger. The complaint alleged that the husband intentionally shot his wife, inflicting injuries from which she died, and that thereafter on the same day he took his own life. The husband and wife had separated and there was a decree of limited divorce, but the bonds of marriage had not been severed completely. The wife's sole heir and next of kin, it is alleged, is the minor son of the marriage, for whom plaintiff is guardian. The minor, it is also alleged, was dependent

in part upon his mother for support and was in her sole custody. The suit is to recover damages alleged to be due the minor, and is brought under the Wrongful Death Act, D.C.Code § 16–1201, set forth *infra* in pertinent part.

The defendant administrator answered and moved for summary judgment, which was granted on the ground that "a wife may not maintain a personal injury suit against her husband for injuries which occurred during coverture" and, therefore, after her death there can be no action by her representative under the Wrongful Death Act because had she lived the husband, by reason solely of the doctrine of interspousal immunity, could not be sued in tort by his wife. The court thought that this followed from the terms of the Wrongful Death Act. We do not agree. The Act provides, in pertinent part:

Whenever \* \* \* the death of a person shall be caused by the wrongful act \* \* \* of any person \* \* \* and the act \* \* \* is such as would, if death had not ensued, have entitled the party injured, \* \* \* to maintain an action and recover damages, the person who \* \* \* would have been liable if death had not ensued shall be liable to an action for damages for such death \* \* \* and such damages shall be assessed with reference to the injury resulting from such act \* \* \* to the spouse and next of kin of such deceased person \* \* \*.

D.C.Code § 16–1201 (1961 ed.).

The interspousal immunity upon which the District Court relied has prevailed in this jurisdiction. This is so notwithstanding the Married Women's Act, incorporated in our Code as Section 30–208.[1] Thompson v. Thompson, 218 U.S. 611, 31 S.Ct. 111, 54 L.Ed. 1180; Mountjoy v. Mountjoy, D.C.App., 206 A.2d 733; and see Steele v. Steele, 65 F.Supp. 329 (D.D.C.). The important respects in which this Act eliminated a wife's disability did not go so far, the Court held in *Thompson,* as to enable her to sue her husband for a tort committed by him upon her person. The Court explained:

Apart from the consideration that the perpetration of such atrocious wrongs affords adequate grounds for relief under the statutes of divorce and alimony, this construction [which would discard the immunity] would, at the same time, open the doors of the courts to accusations of all sorts of one spouse against the other, and bring into public notice complaints for assault, slander, and libel, and alleged injuries to property of the one or the other, by husband against wife, or wife against husband. Whether the exercise of such jurisdiction would be promotive of the public welfare and domestic harmony is at least a debatable question. The possible evils of such legislation might well make the lawmaking power hesitate to enact it. But these and kindred considerations are addressed to the legislative, not the judicial, branch of the government. In cases like the present, interpretation of the law is the only function of the courts.

218 U.S. at 617–618, 31 S.Ct. at 112.

*Thompson,* however, involved only the question whether the Married Women's Act should be construed to have abrogated by statute the husband's immunity.

1. Married women shall have power to engage in any business, and to contract, whether engaged in business or not, and to sue separately upon their contracts, and also to sue separately for the recovery, security, or protection of their property, and for torts committed against them, as fully and freely as if they were unmarried; contracts may also be made with them, and they may also be sued separately upon their contracts, whether made before or during marriage, and for wrongs independent of contract committed by them before or during their marriage, as fully as if they were unmarried, and upon judgments recovered against them execution may be issued as if they were unmarried; nor shall any husband be liable upon any contract made by his wife in her own name and upon her own responsibility, nor for any tort committed separately by her out of his presence without his participation or sanction.

D.C.Code § 30–208 (1961 ed.).

The Court was not concerned with whether the doctrine of interspousal immunity in tort could be changed in this jurisdiction by evolution of the common law through judicial decision in the light of changed conditions. Since for reasons to be stated we hold that the doctrine does not apply to the facts of the present case we do not face that problem.

In *Thompson* both husband and wife were living and the marriage was in being when the wife sued the husband. Our question arises in quite different circumstances. It is brought by the legal representative of the wife after her death, for the benefit of her minor child; and it is against the administrator of the husband's estate, not against the husband himself. That such an action is not barred by a husband's immunity from an action by his wife becomes clear when the nature of an action under the Wrongful Death Act is considered.

■ At common law there was no right of action for wrongfully causing the death of another. Lord Ellenborough once decided: "In a civil Court, the death of a human being could not be complained of as an injury * * *."[2] The right of action exists in the District of Columbia by virtue of our statute, D.C.Code, § 16–1201, supra.

■ Such a statute is said to create a right derivative in nature. The cases divide on whether the right is derived from a right of action or from a cause of action. "A right of action is a remedial right affording redress for the infringement of a legal right belonging to some definite person, whereas a cause of action is the operative facts which give rise to such right of action." Fielder v. Ohio Edison Co., 158 Ohio St. 375, 382, 109 N.E.2d 855, 859, 35 A.L.R.2d 1365. Some courts hold that the right to maintain the action derives from the one whose death is caused by the wrongful act, and therefore an action by the legal representative of the deceased is subject to defenses that would have been good against the deceased. Others hold that it derives from the cause of action arising from the operative facts of the wrong, a new right of action being created to enable a person other than the one physically injured[3] to seek compensatory damages. Such damages in our case is for harm to the child attributable to the wrong which resulted in the loss of his mother.

■ We agree with the view that the Wrongful Death Act creates such a new right of action in the next of kin. It derives from the cause of action which stems from the wrongful cause of the death. The right to pursue this cause of action by suit is in the legal representative here, acting for the minor. This determination that the right of action resides in the legal representative bears directly upon the question whether it is barred by the interspousal tort immunity.

■ There are two types of defenses, one personal and one, such as contributory negligence, which invades the operative facts in such a manner as to defeat an action otherwise good. Welch v. Davis, 410 Ill. 130, 132, 101 N.E.2d 547, 548, 28 A.L.R.2d 656; Kaczorowski v. Kalkosinski, 321 Pa. 438, 442, 184 A. 663, 665, 104 A.L.R. 1267; Deposit Guaranty Bank & Trust Co. v. Nelson, 212 Miss. 335, 54 So.2d 476. The administratrix, while she may be said to stand in the shoes of the deceased in some respects, for the purposes of the Wrongful Death Act is the agent of the beneficiary of the action, here the minor son. The beneficiary labors under no personal disability by reason of interspousal immunity. Such a personal defense is not available to defeat the action brought on his behalf.

Even if the right of action is not created as we have explained in the next of kin but is derived from the deceased wife at her death, the immunity would not bar this action. The reasons for the

---

2. Baker v. Bolton, 1 Camp. 493, 170 Eng. Rep. 1033 (1808).

3. Public policy would forbid any award for injury to the husband who committed the wrong in the circumstances of this case.

immunity have completely disappeared and it should be given no effect. In an identical factual situation, Justice Schaefer, speaking for the Supreme Court of Illinois, said:

> Today the immunity can be based solely upon the ground that domestic tranquility is fostered by the prohibition of actions by a wife against her husband. An immunity based upon the preservation of marital harmony can have no pertinence in this case, for here the marriage has been terminated, husband and wife are both dead, and the action is brought for the benefit of a third person.

Welch v. Davis, *supra* 410 Ill. at 134, 101 N.E.2d at 549.

■■ We conclude that the action is not barred by the doctrine of interspousal immunity. This accords with the spirit of the Wrongful Death Act and furthers its purpose. "The statute giving damages on account of death resulting from the wrongful act of another is remedial, and as such must be liberally construed." Calvert v. Terminal Taxicab Co., 48 App. D.C. 119, 121. Our position also has the support of commentators in this area of the law. 2 Harper & James, *Torts* § 24.5 (1956); Prosser, *Torts* § 121, at 933 (3d ed. 1964); Annot., 28 A.L.R.2d 662, 666–67 (1953).

Reversed and remanded for proceedings not inconsistent with this opinion.

PRETTYMAN, Senior Circuit Judge (concurring in the result):

I heartily support the interspousal immunity doctrine in respect to torts, but, where the couple had a limited decree of divorce and the tort was the murder of the wife by the husband coupled with his own suicide, the doctrine has no factual susbtance upon which to rest, and I see no reason to give effectiveness to its fiction. Especially is this so in an action brought on behalf of a minor child of the marriage against the estate of the parent who destroyed his sole support and security.