Stephine **VESELITS**, A Minor, by Laneeta R. **CRUTHIRDS**, as Guardian, Grandmother and Next Friend, Plaintiff,

v.

Robert J. **VESELITS**, Defendant.

Civ. A. No. S86–0152(R).

United States District Court, S.D. Mississippi, S.D.

Feb. 26, 1987.

Amanda B. Kennerly, Ocean Springs, Miss., Briley Richmond, Biloxi, Miss., for plaintiff.

William H. Myers, Pascagoula, Miss., for defendant.

## MEMORANDUM OPINION

DAN M. RUSSELL, Jr., District Judge.

This cause is presently before this Court on the defendant's motion to dismiss. The underlying issue was first brought to the Court's attention in its review of the submitted Pre-Trial Order which stated as a contested issue of law "whether or not a minor child can bring a tort action against her natural father for the death of her natural mother." Pre-Trial Order, page 4. The plaintiff's waiver of the ten-day notice requirement permitted this Court to entertain oral argument on February 13, 1987. After carefully considering the arguments and submitted briefs of both parties the Court finds that there is no prior state decision similar to the peculiar facts of the present case. As such, this Court must interpret the existing precedent in relation to the issue before this Court and render its decision accordingly. *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

## FACTS

The facts underlying the present action are generally unconverted. The plaintiff, Stephine Veselits, is the daughter of the defendant, Robert Veselits, and the late Shari Veselits. On March 1, 1980, the defendant Robert Veselits shot and killed his wife and Stephine's mother in Bossier City, Louisiana. Robert Veselits was subsequently convicted for the crime of manslaughter and served time in the State Penitentiary in Louisiana before being paroled and pardoned.

Stephine's grandmother, Laneeta R. Cruthirds, was awarded legal guardianship of Stephine in February, 1982 and won full custody after a trial on the merits in December, 1986. On February 26, 1986, Stephine, by and through her grandmother, filed a wrongful death action against her natural father pursuant to Miss.Code Ann. § 11-7-13 (Cum.Supp.1986). This section provides in part that:

> Whenever the death of any person shall be caused by any real, wrongful or negligent act or omission, or by such unsafe machinery, way or appliances as would, if death had not ensued, have entitled the party injured or damaged thereby to maintain an action and recover damages in respect thereof, ... and such deceased person shall have left a widow or children or both, or husband or father or mother, or sister, or brother, the person or corporation, or both that would have been liable if death had not ensued, and

the representatives of such person shall be liable for damages, notwithstanding the death, and the fact that death was instantaneous shall in no case affect the right of recovery. The action for such damages may be brought in the name of the personal representative of the deceased person for the benefit of all persons entitled under the law to recover, or by widow for the death of her husband, or by the husband for the death of the wife, or by the parent for the death of a child, or in the name of a child, or in the name of a child for the death of a parent. . . .

## DEFENDANT'S FIRST AFFIRMATIVE DEFENSE THAT AS THE NATURAL FATHER OF THE PLAINTIFF HE IS IMMUNE FROM SUIT

The defendant contends that as the natural father of Stephine Veselits he is immune from any suit filed by or on her behalf. It is clearly established in Mississippi case law that the doctrine of parental immunity prevents an unemancipated minor from asserting a civil claim against a parent. The inception of this doctrine was first announced by the Mississippi Supreme Court in *Hewellette v. George*, 68 Miss. 703, 9 So. 885 (1891). In *Hewellette*, the Court held that an unemancipated minor child could not maintain an action against her mother for maliciously causing the minor to be imprisoned in an insane asylum. The mother was under the obligation to care for, guide and control the child, and the child was under the reciprocal obligation to aid, comfort and obey the mother. The Court stated that the peace and best interests of society, as well as the sound public policy designed to subserve the repose of families, forbade the minor the right to appear in court in the assertion of a claim for civil redress for personal injuries suffered at the hands of the parent.

In *Durham v. Durham*, 227 Miss. 76, 85 So.2d 807 (1956), the Court applied the parental immunity doctrine to an action filed by an unemancipated minor child against her natural father pursuant to the Mississippi Wrongful Death Statute for the death of her natural mother. The death was the result of the defendant's simple negligence in the operation of an automobile. The plaintiff and defendant were the sole survivors of the deceased mother.

The plaintiff child had contended that the wrongful death statute repealed the common law rule of immunity. In a thorough discussion of Mississippi common law and the case of *Strong v. Strong*, 70 Nev. 290, 267 P.2d 240 (1954), which addressed the same argument raised by the plaintiff in *Durham*, the Mississippi Supreme Court rejected the plaintiff's argument and held the minor child plaintiff to be precluded from bringing suit. The Court reasoned that a cause of action for wrongful death is created by certain and unmistakable language. Therefore, any obligation of the common law doctrine of parental immunity must also be by certain and unmistakable language and not through implication.[1] As stated by the court:

This state is committed to a policy that actions may not be maintained by an unemancipated minor against a parent for a tort. We are not persuaded that the policy reasons involved apply with less force to a case arising under the wrongful death statute insofar as the precise question is here presented. We fully recognize that matters of public policy are for the legislature to declare when it has acted, and it is not for the courts to question the wisdom of any constitutional declaration of public policy by the legislative body. The wrongful death statute should be construed and administered consistent with all the rules of common law not expressly abrogated. *Burns v. Allen*, 202 Miss. 240, 31 So.2d

---

1. Although the *Durham* decision discussed the Mississippi Wrongful Death Statute contained in the Code of 1942, Section 1453, a reading of the statute as it appears in the Mississippi Code of 1972, Section 11–7–13, as well as the 1981 amendment, reveals that the language bestowing the right to sue remains identical to the Code of 1942 containing no additional language abrogating the common law.

125. We fail to find in the wrongful death statute any expression indicating a legislative intent to abrogate the rule that a minor may not sue a parent in tort.

85 So.2d at 809.

The Court reached a similar decision nearly twenty years later in *McNeal v. Administrator of the Estate of McNeal,* 254 So.2d 521 (Miss.1971). The Mississippi Supreme Court affirmed the dismissal of a complaint filed by the wife and minor daughter of the deceased father killed in an automobile accident in which the complainants were passengers. The original bill of complaint alleged that the wife and child received injuries when the deceased father lost control of the automobile he was driving due to his careless and negligent conduct of driving at a high rate of speed. In holding that an action cannot be maintained by the complainants against the estate of the deceased husband and father, although the husband had liability insurance, the court decided to "follow[ ] the common law rule that an unemancipated child could not sue his parents for injuries resulting from the tortious acts of the parent." *Id.* at 523.

In support of her contention that an action can be maintained against the defendant, the plaintiff cites *Deposit Guaranty Bank & Trust Co. v. Nelson,* 212 So.2d 476, 54 So.2d 476 (1976) as an exception to the spousal and parental immunity doctrine enunciated in the preceding cases.

Whereas the actions in *Durham* and *McNeal* were based upon injuries and death sustained through the *negligence* of the father, the *Nelson* case involves the *intentional* killing of the wife by the husband. The facts reveal that Emmett Wellsby shot and killed his wife Jessie Wellsby. Jerome Nelson, the 37 year old natural daughter of Jessie Wellsby and stepdaughter of Emmett Wellsby, filed an action against her stepfather for damages resulting from the wrongful death of her mother. The Mississippi Supreme Court upheld a jury verdict of $12,000.00 in favor of the stepdaughter brought under the Wrongful Death Statute reasoning that spousal im-

munity ceases to exist when it is destroyed by the intentional killing of the wife by the husband. The court stated:

> The denial of a right of action by a surviving child against the husband who has killed her mother would be inconsistent in principle with this constitutional right, and with plain ideas of justice. It would not conform with what we conceive to be the legislative intention in Code Sec. 1453. To extend the tort-feasor's immunity to a new cause of action by the survivors of the deceased wife would apply the immunity rule to a situation never contemplated in its creation and wholly irrelevant to its reasons. The immunity must be confined to cases where its purposes can practically operate. That is impossible here because the tort was of such violence as to end the marital relationship.

*Nelson,* 54 So.2d at 480.

The defendant contends that the *Nelson* decision is distinguishable from the present case in that Jerome Nelson was a 37 year old stepdaughter whereas Stephine Veselits is the 7 year old natural daughter of the defendant. Assumingly, once the marital relationship between Jerome Nelson's mother and Emmett Wellsby was terminated by Wellsby's intentional violent act, the two stood as strangers.

The relationship between Stephine Veselits and Robert Veselits is substantially different from that of Nelson and Wellsby. Stephine is the unemancipated minor child of the defendant to whom he has a legal duty of support. These factual peculiarities were not before the Mississippi Supreme Court when it handed down the *Nelson* decision. It should also be noted that since 1951 the *Nelson* decision has not been cited in a Mississippi case for the proposition that an unemancipated minor child could sue her natural father in tort for the intentional killing of her natural mother.

The plaintiff also relies on the case of *Jones v. Pledger,* 363 F.2d 986 (D.C.Cir. 1966). In *Jones* a minor child brought an action through his guardian against the estate of his deceased father pursuant to

the district's Wrongful Death Act for killing his mother. The complaint had alleged that the husband intentionally shot his wife, inflicting injuries from which she died, and subsequently took his own life. The husband and wife had separated and there was a decree of limited divorce, but the bonds of marriage had not been severed completely. At the time of the killing, the couple's child was partly dependent upon his mother for support and was in her sole custody. The court noted that although the personal defense of spousal immunity was not available to defeat the action brought on behalf of the minor, the immunity would still not bar the action since the reasons for the immunity completely disappeared with the killing of the child's mother and subsequent suicide of the child's father. In quoting Justice Schaefer of the Supreme Court of Illinois, the court stated:

> Today the immunity can be based solely upon the ground that domestic tranquility is fostered by the prohibition of actions of a wife against her husband .. An immunity based upon the preservation of marital harmony can have no pertinence in this case, for here the marriage has been terminated, husband and wife are both dead, and the action is brought for the benefit of a third person.

*Welch v. Davis*, 410 Ill. 130, 101 N.E.2d 547, 549 (1951).

As originally stated in *Hewellette, supra,* the doctrine of immunity protecting a parent from a tort action by his child or spouse is founded on the basis of the sound public policy of subserving the repose of families and preserving domestic peace and tranquility. There is no question in *Jones* that the reasons for the rule is abrogated since there was no semblance of family remaining after the father's actions. The marriage was terminated by the killing of both the mother and suicide of the father resulting in a wrongful death action being filed against the father's estate. As stated by Senior Judge Prettyman in his concurrence:

> I heartily support the interspousal immunity doctrine in respect to torts, but, where the couple had a limited decree of

divorce and the tort was the murder of the wife by the husband coupled with his own suicide, the doctrine has no factual substance upon which to rest, and I see no reason to give effectiveness to its fiction. Especially is this so in an action brought on behalf of a minor child of the marriage against the estate of the parent who destroyed his sole support and security.

363 F.2d 986 at 989.

Whereas the reasons for the immunity had completely disappeared in the *Jones* and *Nelson* decisions due to termination of the family unit, there remains the significant distinguishable fact that a parent-child relationship still exists between the plaintiff Stephine Veselits and the defendant Robert Veselits.

Regardless of the action of Mr. Veselits, no one disputes that there is still mutual love and affection shared by the parties which may result in Stephine choosing to live with her father upon her fourteenth birthday. Additionally, Robert Veselits has not abandoned his child, as evidenced by his continuing fight to gain custody rights, and there exists the father's legal duty of support, together with the mutual rights of heirship between the defendant and his daughter. A personal judgment against the plaintiff's own father could very well have a chilling effect on the father-child relationship, as well as hamper the defendant's duty of support.

■ Therefore, it is the opinion of this Court that a strict interpretation of Mississippi case law does not provide for the exception to the immunity doctrine as contended by the plaintiff. Any such exception cannot be created by this Court, but must come from either this State's legislature or contrary interpretation by the State Supreme Court. Until then, this Court must follow the fact that "This State is committed to a policy that actions may not be maintained by an unemancipated minor against a parent for a tort." *Durham*, 85 So.2d at 809.

The defendant's motion to dismiss should, therefore, be granted.

## DEFENDANT'S SECOND AFFIRMATIVE DEFENSE THAT THE PLAINTIFF'S SUIT IS TIME BARRED.

The defendant asserts as a second affirmative defense that the present cause of action is barred by the Mississippi one year statute of limitations for certain intentional torts. The plaintiff rebuts this contention arguing that the Wrongful Death Statute grants a six year statute of limitations for all actions filed pursuant to it, regardless if they are founded on an intentional tort theory or a negligence theory.

A close reading will reveal that the Wrongful Death Statute does not specifically provide for a limitation period. Although a one year statute of limitations was originally written into the statute, it was removed by the legislature on March 21, 1908.

Since the Wrongful Death Statute does not provide a limitation period which extinguishes a right of action after a specific period has elapsed, all questions concerning statutory periods of limitation should be considered *in pari materia* for comparison and construction. The rule of *in pari materia* is a logical extension of the general principle that whenever a legislative body passes a new statute, it does so aware of all existing statutes intending that the new statute be construed as "intended to fit into the existing system and to be carried into effect conformably to it, except as a different purpose is plainly shown." *Erlenbaugh v. United States*, 409 U.S. 239, 244, 93 S.Ct. 477, 480, 34 L.Ed.2d 446 (1972), *United States v. Jefferson Electric Manufacturing Co.*, 291 U.S. 386, 396, 54 S.Ct. 443, 447, 78 L.Ed. 859 (1933).

The time within which an action for wrongful death must be brought is generally governed by Mississippi's general statute of limitations. This statute provides that:

All actions for which no other period of limitation is prescribed shall be commenced within six years next after the cause of such action accrued, and not after.

Miss.Code Ann. § 15–1–49 (1972).

Section 15–1–49 is limited in that it grants a six year period only to those actions "for which no other period of limitations is prescribed." The cause of action before the Court is one founded upon the intentional torts of assault and battery which are specifically covered in Section 15–1–35.

Miss.Code Ann. § 15–1–35 prescribes limitations which are applicable to certain intentional torts. The statute states that

All actions for assault, assault and battery, maiming, false imprisonment ... shall be commenced within one year next after the cause of such action accrued, and not after.

Since the wrongful death action is predicated upon the defendant's intentional torts contained in the above section, the one year statute, rather than the six year statute of limitations is applicable to the present action.

The fact that Mississippi's Wrongful Death Statute is subject to such special statutory limitations is reflected in the case of *Arender v. Smith County Hospital*, 431 So.2d 491 (Miss.1983). In *Arender*, the wife of Dewitt Arender and the mother of his children was admitted to the Smith County Hospital in December, 1974. She died some six days following her admission from the alleged negligent acts of the defendant.

On November 24, 1981, nearly seven years later, the husband and children of Mrs. Arender filed a negligence action against the Smith County Hospital. In discussing why the suit was barred by the six year statute of limitations, the Court stated:

At the time the Arenders filed suit against the appellees, there was not a special statutory limitation, independent of the general statute of limitations, section 15–1–49, as to the time an action for wrongful death must be brought. In

March 1908, the legislature removed the one-year limitation and since that time all such actions have been governed by the six-year statute.[1]

431 So.2d at 492.

Footnote 1 to the above quotation explains that a special statutory limitation of two years became applicable to medical or pharmaceutical malpractice cases effective July 1, 1979. Since Mrs. Arender's death was in December, 1974, the special limitation did not apply. By making such an observation the Court acknowledged that actions filed pursuant to the Wrongful Death Statute must be brought within the corresponding prescription statute for which the cause of action is predicated.

Also discussed in *Arender* was the issue of whether the statute was tolled due to the fact that the decedent's children were minors. The Court determined that the savings statute, Miss.Code Ann. § 15–1–59, does not apply to an action for wrongful death. The Court went on to note that:

> Even if there had been a savings in favor of the children, there being but a single cause of action, such savings would operate in their favor only when there was no person *in esse* who could sue on their behalf. Mr. Arender was that person *in esse* who had the right to file suit during the six-year period after Mrs. Arender's death.

431 So.2d at 493.

In the present case, Laneeta R. Cruthirds was appointed guardian of Stephine Veselits on February 25, 1981. Upon her appointment as guardian, Mrs. Cruthirds became a person *in esse* who had the right to file suit within the period of time provided in Section 15–1–35. That time period expired on the 25th day of February, 1982. The plaintiff failed to file her action until February 24, 1986, some four years after the statute of limitations had expired.

Therefore, it is the opinion of this Court that the plaintiff's cause of action should also be dismissed based on the fact that the one year statute for an intentional tort was controlling and that the statute ran one year from the date Laneeta R. Cruthirds was appointed as guardian.